Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
Bradley K. King (SBN 274399)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
bking@ahdootwolfson.com

**LIDDLE & DUBIN, P.C.**
David R. Dubin (PHV Forthcoming)
Nicholas A. Coulson (PHV Forthcoming)
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025
ddubin@ldclassaction.com
ncoulson@ldclassaction.com

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFREDO HERRERA and MACARIA HERRERA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CATHAY PACIFIC AIRWAYS LTD., a Foreign Corporation, <br><br> Defendant. | Case No.: 3:20-cv-03019 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiffs Winifredo Herrera and Macaria Herrera ("Plaintiffs"), by and through her their counsel, file this Class Action Complaint against Cathay Pacific Airways Ltd. ("Defendant" or "Cathay Pacific" on behalf of themselves and on behalf of a class of similarly situated individuals, and allege, upon personal knowledge as to their own actions, and upon investigation of counsel as to all other matters, as follows:

**NATURE OF THE ACTION**

2. In the midst of the greatest public health and economic crisis in living memory, Defendant, a massive transnational air carrier, has sought to shift its losses onto its innocent passengers, furthering the financial hardship endured by people across the country.

3. Each of Defendant's airfare tickets encompasses a contractual agreement between it and its passengers. That agreement gives passengers the right to a refund if their flight is cancelled.

4. With mounting cancellations due to the COVID-19 pandemic, Defendant has sought to refrain from paying out the refunds for cancelled flights to which its passengers are entitled.

5. Plaintiffs brings this action on behalf of themselves and a class of similarly situated individuals who were deprived of refunds for cancelled flights.

6. Defendant has quietly sought to force its passengers to endure the financial losses that its own contract created for it in the entirely foreseeable scenario that world occurrences would disrupt the domestic travel industry.

7. Defendant's uniform conduct is equally applicable to the class. Plaintiffs bring this class action against Defendant for breach of contract and seeks an order requiring Defendant to, among other things: (1) refrain from issuing coupons in lieu of refunds to any Class member who has not requested coupons; and (2) pay damages and/or restitution to Plaintiffs and Class members.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant, a citizen of a foreign state.

9. This Court has personal jurisdiction over Defendant because it conducts significant, substantial, and not-isolated business activities in California and a substantial portion of the acts complained of took place in California.

10. Venue is proper in the Northern District of California because Defendant conducts business in this District and many of the events that gave rise to Plaintiffs' claims occurred in this District.

## PARTIES

11. Plaintiffs Winifredo Herrera and Macaria Herrerra are individuals and are for jurisdictional purposes citizens of the State of California.

12. Defendant Cathay Pacific Airways Ltd. is a foreign corporation organized under the laws of Hong Kong with its principal place of business located in Hong Kong.

## FACTUAL ALLEGATIONS

13. Cathay Pacific is a transcontinental airline company that offers passenger services to customers to more than 190 destinations, with more than 8,000 regular routes spanning five continents, including Asia, Europe, Africa, North America, and South America.

14. Cathay Pacific carries an average of more than one million passengers each month.

15. Defendant's flight network includes regular routes to numerous destinations in the United States, including Boston, Chicago, Los Angeles, New York, Newark, San Francisco, Seattle, and Washington D.C.

16. Defendant's regular routes include multiple flights departing from and arriving at the San Francisco International Airport, which is located in the Northern District of California.

17. Defendant offers and sells flight tickets directly to customers, who make monetary payments to Defendant in exchange for a selected flight itinerary that conforms to customer's specifically selected travel schedule.

18. Defendant also sells flight tickets through third-party websites and travel agents.

19. Defendant collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

20. As part of each ticket purchase, Defendant makes a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

20. Defendant's General Conditions of Carriage state that "[w]here we fail to provide carriage in accordance with your contract with us, or where you request a voluntary change of your arrangements, we will refund any unused Ticket or portion thereof[.]"[1]

21. For involuntary refunds, Defendant warranties that "[i]f we cancel a flight, [or] fail to operate a flight reasonably according to schedule … the amount of the refund shall be:

  a) If no portion of the Ticket has been used, an amount equal to the fare paid;

  b) If a portion of the ticket has been used the refund will be the higher of:

   i. The one way fare (less applicable discounts and charges) from point of interruption to destination or point of next stopover, or

   ii. The difference between the fare paid and the fare for the transportation used."

22. Defendant's contract of carriage does not promise, permit, or require the issuance of any vouchers or coupons lieu of monetary refunds in the event of cancellation.

23. Under U.S. law, 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section. Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

24. As part of each ticket purchase, Defendant made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full monetary refund.

---

[1] https://www.cathaypacific.com/content/dam/cx/legal-and-privacy/ka-general-conditions-of-carriage-for-passengers-baggage-en.pdf (last visited April 30, 2020).

*Defendant's Response to the Covid-19 Pandemic*

25. On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

26. As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

27. On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

28. Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the countries where Defendant offers air travel services.

29. As part of each ticket purchase, Defendant made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

30. Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

31. The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

32. It was entirely known and foreseeable to Defendant that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

33. Yet, Defendant quietly ceased honoring contractual agreements with customers, including Plaintiffs and the putative class, by discontinuing full monetary refunds for cancelled and substantially rescheduled flights.

34. Instead of providing an automatic refund, as promised, Defendant requires its customers to navigate through its website, including by using login information and password, merely to request a refund.

35. Defendant has erected numerous additional bureaucratic barriers which prevent many passengers from receiving a monetary refund, or even a flight credit, ensuring a windfall to Defendant because it knows many customers will be unable to successfully complete the refund request process.

36. Upon refund requests, Defendant is uniformly denying refunds to customers and forcing them to accept expiring flight credits.

37. Defendant also set harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

38. The practice of offering expiring credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

39. The future flight credits provide Defendant additional opportunities to charge service, processing, baggage, and other fees that will ensure Defendant additional future profits—while retaining Plaintiffs' cash in the interim—substantially diminishing any value for Plaintiffs and the putative class.

40. Recognizing the abuse, and potential for abuse, by Defendant and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind Defendant that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

41. On April 3, 2020, the DOT issued a notice to remind carriers "that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." It notes that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged." [2]

---

[2] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last accessed April 15, 2020).

42. The notice continues that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.
Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier.1 The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).2 The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.
…
Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

43. In addition to violation of its own contract of carriage, Defendant has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and provide full refunds to its passengers.

44. Defendant has deprived Plaintiffs and the Class of the refunds to which they are entitled by 1) failing to provide refunds to their credit or debit cards; 2) issuing coupons or vouchers in place of refunds; 3) rendering it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or 4) obscuring passengers' right to a monetary refund.

*Plaintiffs' Use of Defendant's Services*

45. On or about July of 2019, Plaintiffs purchased a ticket for Winifredo Herrera to travel from San Francisco to the Phillipines, departing in September of 2019 and returning in February 2020. The cost of this ticket was approximately $1,000.

46. On or about July of 2019, Plaintiffs purchased a ticket for Macaria Herrera to travel from San Francisco to the Phillipines, departing in October of 2019 and returning in February 2020 on the same flight as Winifredo. The cost of this ticket was approximately $700.

47. Defendant cancelled Plaintiffs' return flight to San Francisco in February 2020.

48. At the time of the flight cancellation, Defendant informed Ms. Herrera that the Herreras would receive a refund for their cancelled flight.

49. Mr. and Mrs. Herrera had to purchase replacement airfare on another airline to return to San Francisco at a cost of approximately $700 per ticket.

50. Once they had returned home to the United States, the Herreras received an e-mail from Defendant stating that they would in fact only receive a voucher, and not a monetary refund.

51. The voucher that Defendant indicated it would provide would expire one year from the original date of purchase, such that Plaintiffs would need to use it by July of 2020 despite the continuing impacts of the global pandemic, particularly on international travel.

52. Plaintiffs have repeatedly attempted to contact Defendant regarding the refund that they are owed. Three e-mails from Mrs. Herrera to Defendant have gone unreturned.

## I.   CLASS ALLEGATIONS

53. Plaintiffs bring this class action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a Cathay Pacific flight scheduled to operate from February 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Cathay Pacific, and who were not provided a refund. Excluded from the Class are (a) any person who has specifically requested a coupon or voucher in lieu of a refund; (b) any person who requested and received alternative air transportation in lieu of a refund; (c) all persons who are employees, directors, officers, and agents of either Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

54. Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

55. Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant carries over 10 million passengers per year on tens of thousands of flights. A significant percentage of those flights during the class period have been cancelled. At a minimum, there are tens of thousands of Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

56. Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. Common issues include:

   A. Whether Defendant formed contracts with its passengers in selling them tickets for air travel;

   B. Whether Defendant's conduct breaches the terms of its contracts with its passengers, including its Contract of Carriage and Terms of Service;

   C. Whether Defendant is required to provide a refund, rather than an expiring voucher, to passengers for cancelled flights.

   D. The nature of the relief, including equitable relief, to which Plaintiffs and the class are entitled.

57. Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class they seek to represent. Plaintiffs and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct.

58. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiffs' counsel is competent and experienced in litigating class actions.

59. Superiority. Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiffs and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress

1  individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

60. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

61. Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

62. Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

63. A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

64. The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by purchasing their tickets.

65. The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

66. Plaintiffs and the Class performed their obligations under the contract.

67. Defendant breached the contract when they sought to provide coupons or vouchers in lieu of refunds for passengers on canceled flights.

68. Defendant's breaches were willful and not the result of mistake or inadvertence.

69. As a result of Defendant's breach Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class of similarly situated individuals,

requests the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiffs as representatives of the class and designate counsel of record as class counsel;

(b) Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiffs and class members and/or order Defendant to disgorge profits they realized as a result of their unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiffs and class members;

(d) Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(e) For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f) For costs of the proceedings herein;

(g) For reasonable attorneys' fees as allowed by law; and

(h) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 1, 2020                    Respectfully submitted,

**AHDOOT & WOLFSON, PC**

*/s/ Tina Wolfson*
Tina Wolfson
Robert Ahdoot
Bradley K. King
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
bking@ahdootwolfson.com

**LIDDLE & DUBIN, P.C.**
David R. Dubin (PHV Forthcoming)
Nicholas A. Coulson (PHV Forthcoming)
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025
ddubin@ldclassaction.com
ncoulson@ldclassaction.com

*Attorneys for Plaintiffs and the Putative Class*