Kevin R. Sutherland (State Bar No. 163746)
Benedict E. Idemundia (State Bar No. 289386)
Brandon K. Franklin (State Bar No. 303373)
CLYDE & CO US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: kevin.sutherland@clydeco.us
       benedict.idemundia@clydeco.us
       brandon.franklin@clydeco.us

Christopher Carlsen (Admitted *Pro Hac Vice*)
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 710-3900
Facsimile: (212) 710-3950
Email: christopher.carlsen@clydeco.us

Attorneys for Defendant
CATHAY PACIFIC AIRWAYS LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFREDO HERRERA and MACARIA HERRERA, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CATHAY PACIFIC AIRWAYS LTD., a Foreign Corporation,<br><br>    Defendant. | Case No.: 3:20-cv-03019<br><br>STATEMENT OF RECENT DECISIONS OF CATHAY PACIFIC AIRWAYS LIMITED IN FURTHER SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS<br><br>Date: January 29, 2021<br>Time: 9:30 a.m.<br>Place: Courtroom of the Honorable Magistrate Judge Joseph C. Spero |

Pursuant to Rule 7-3(d)(2) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, defendant Cathay Pacific Airways Limited ("Cathay Pacific") hereby submits the following Statement of Recent Decisions.

//

//

---

STATEMENT OF RECENT DECISIONS OF CATHAY PACIFIC IN FURTHER SUPPORT OF
MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS

1. *Bugarin v. All Nippon Airways Co.,* No. 20-CV-03341-BLF, 2021 WL 175940, at *1 (N.D. Cal. Jan. 19, 2021) (Trial Court Order on Motion to Dismiss), a true and correct copy of which is attached hereto as Exhibit A.

Dated: January 28, 2021          CLYDE & CO US LLP

By: _____
KEVIN R. SUTHERLAND
CHRISTOPHER CARLSEN (ADMITTED *PRO HAC VICE*)
BENEDICT E. IDEMUNDIA
BRANDON K. FRANKLIN
Attorneys for Defendant
CATHAY PACIFIC AIRWAYS LIMITED

# EXHIBIT A

2021 WL 175940
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Ashley BUGARIN, Plaintiff,
v.
ALL NIPPON AIRWAYS CO., LTD., Defendant.

Case No. 20-cv-03341-BLF
|
Signed 01/19/2021

**Attorneys and Law Firms**

Yeremey O. Krivoshey, Bursor Fisher, P.A., Walnut Creek, CA, for Plaintiff.

Scott David Cunningham, Condon & Forsyth LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

[Re: ECF 18]

BETH LABSON FREEMAN, United States District Judge

**\*1** In this putative nationwide class action, Plaintiff Ashley Bugarin ("Bugarin") claims that Defendant All Nippon Airways Co., Ltd. ("ANA") breached its Conditions of Carriage by failing to issue refunds to thousands of passengers whose flights were cancelled as a result of the COVID-19 pandemic. Bugarin asserts two state law claims on behalf of herself and the putative class, one for breach of contract and the other for rescission. ANA moves to dismiss those claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

ANA's motion is DENIED to the extent it is brought under Rules 12(b)(1) and 12(b)(2), and GRANTED to the extent it is brought under Rule 12(b)(6). Leave to amend is GRANTED on the contract claim and DENIED on the rescission claim.

**I. BACKGROUND**[1]

Bugarin, who resides in San Jose, California, purchased a round-trip flight to Japan on ANA. FAC ¶¶ 809, 19, ECF 15. The outbound flight was from San Jose, California to Tokyo, Japan, while the return flight was from Tokyo, Japan to San Francisco, California. FAC ¶¶ 8, 19. Bugarin made the purchase through a third party, Asaptickets.com ("ASAP"). FAC ¶ 9; Ito Decl. ¶ 19, ECF 18-1. ASAP is not an authorized ticket agent of ANA and does not have a contractual relationship with ANA. Ito Decl. ¶ 11. However, pursuant to industry practice, an unauthorized ticket agent such as ASAP may sell ANA tickets through an authorized ticket agent. Ito Decl. ¶ 19. In this case, ASAP sold Bugarin the ANA ticket through an authorized ticket agent, Downtown Travel, which is based in New York. Ito Decl. ¶¶ 17-19.

Bugarin's departing flight from San Jose, California to Tokyo, Japan operated as scheduled on March 23, 2020, but Bugarin was not on the flight. Ito Decl. ¶ 24. Bugarin's return flight was cancelled due to the COVID-19 pandemic. FAC ¶ 19. Bugarin

"attempted to request a cash refund from All Nippon by calling All Nippon." *Id.* She "called All Nippon several times and was on the phone for several hours each time, but she was never able to reach a representative of All Nippon." *Id.* Bugarin never spoke to an ANA representative and she was not refunded for the cancelled return flight. *Id.*

Bugarin claims that ANA's failure to issue her a refund breached the applicable Conditions of Carriage ("COC"), [2] attached as Exhibit A to the FAC. FAC ¶¶ 38-44 & Exh. A, ECF 15. Section 13 of the COC, "Refunds," states that ANA will provide a refund when a passenger is prevented from using his or her ticket as a result of ANA's cancellation of a flight. COC § 13(A), (C). Section 13 specifies that "ANA will make a refund to the person named in a Ticket or, to the person who purchased the Ticket upon presentation to ANA of satisfactory evidence to prove that he/she is entitled by these Conditions of Carriage to such refund." COC § 13(B).

**\*2** The FAC does not allege that Bugarin presented ANA with evidence of entitlement to a refund or, indeed, that she ever asked ANA for a refund. Bugarin claims that ANA nonetheless was obligated to refund her return fare under the plain language of the COC. According to Bugarin, the COC's provision regarding evidence merely clarifies who may obtain a refund, but does not establish a condition precedent to a refund. She also claims that the COC incorporates an Enforcement Notice issued by the Department of Transportation ("DOT") on April 3, 2020 ("DOT Enforcement Notice"), which requires issuance of a refund upon cancellation of a flight. FAC ¶¶ 41-44. The notice, titled "Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel," states that "passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." DOT Enforcement Notice, https://www.transportation.gov/airconsumer/enforcement_notice_refunds_apr_3_2020 (last accessed Jan. 13, 2021). Bugarin also points to the DOT's Frequently Asked Questions ("FAQs") page, posted May 12, 2020, addressing airline passengers' entitlement to refunds for flights cancelled due to the COVID-19 pandemic. FAC ¶ 4. The FAQs state that "Airlines and ticket agents are required to make refunds promptly. For airlines, prompt is defined as being within 7 business days if a passenger paid by credit card, and within 20 days if a passenger paid by cash or check." FAQs, https://www.transportation.gov/airconsumer/FAQ_refunds_may_12_2020 (last accessed Jan. 13, 2021).

Bugarin seeks damages for ANA's alleged breach of its COC or, in the alternative, rescission of the COC, on behalf of herself and the following nationwide class: "All persons in the United States who purchased tickets for travel on an All Nippon flight scheduled to operate to, from, or within the United States whose flights were cancelled or were subject to a significant schedule change and not refunded." FAC ¶¶ 24, 46, 53. She also seeks to represent "a subclass of all Class members who purchased tickets in California." FAC ¶ 25. According to Bugarin, "there are hundreds of thousands of individuals that are members of the proposed Classes." FAC ¶ 29.

Bugarin filed the complaint in this action on May 15, 2020 and filed the FAC as of right in response to a motion to dismiss filed by ANA. *See* Compl., ECF 1; FAC, ECF 15. ANA now moves to dismiss the FAC.

## II. DISCUSSION

ANA moves to dismiss the FAC on several grounds. First, ANA seeks dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Bugarin cannot demonstrate Article III standing and that her claims are both unripe and moot. Second, ANA seeks dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Third, ANA seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction. Bugarin contends that all of ANA's asserted grounds for dismissal are without merit.

"[J]urisdiction generally must precede merits in dispositional order." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Only if the Court is satisfied that it has both subject matter jurisdiction and personal jurisdiction may it proceed to address ANA's merits arguments under Rule 12(b)(6). *See id.* ("Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."). Consequently, the Court first takes up ANA's Rule 12(b)(1) challenge, then its Rule 12(b)(2)

challenge, and finally its Rule 12(b)(6) challenge. Before doing so, however, the Court briefly addresses ANA's submission of evidence in the form of a declaration from one of its executives, Yutaka Ito, and Bugarin's request for judicial notice.

Mr. Ito's declaration describes ANA's structure, business practices, and contacts with California. *See generally* Ito Decl., ECF 18-1. Mr. Ito also states that ANA has provided refunds to thousands of passengers, and that ANA has no record of a request for refund by Bugarin. *See* Ito Decl. ¶¶ 25-29. Bugarin contends that ANA's arguments based on Mr. Ito's declaration "go well beyond the four corners of the pleadings and are inappropriate for consideration at the motion to dismiss stage." Opp. at 2 n.1, ECF 25. This contention is without merit insofar as ANA seeks dismissal for lack of subject matter jurisdiction and lack of personal jurisdiction, because the Court properly may consider evidence extrinsic to the pleadings when evaluating motions to dismiss under Rules 12(b)(1) and 12(b)(2). *See Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (court may consider evidence beyond the complaint in deciding factual attack under Rule 12(b)(1)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (challenge to personal jurisdiction under Rule 12(b)(2) may be based on materials outside the complaint). Bugarin is correct that Mr. Ito's declaration may not be considered in evaluating ANA's Rule 12(b)(6) motion, as the Court's consideration of that motion is limited to the face of the complaint, matters that may be judicially noticed, and documents that are incorporated by reference into the complaint. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

**\*3** Bugarin requests judicial notice of the California Secretary of State's business records showing that ANA maintains a registered agent for service of process in California. *See* RJN, ECF 26. The request for judicial notice is GRANTED. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (finding it appropriate to take judicial notice of results of records searches on the California Secretary of State's corporate search website).

The Court next turns to ANA's asserted grounds for dismissal.

### A. Challenge to Subject Matter Jurisdiction under Rule 12(b)(1)

#### 1. Legal Standard

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air*, 373 F.3d at 1039. In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint. *Id*. In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction. *Id*. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. "The court need not presume the truthfulness of the plaintiff's allegations." *Id*. If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction. *Id*.

#### 2. Discussion

ANA's jurisdictional attack is both facial and factual. ANA argues that the facts pled in the FAC are insufficient to establish Article III standing or ripeness. ANA also relies on the the declaration of its executive, Mr. Ito, to show that Bugarin has not suffered an injury in fact and that her claims are unripe and moot. *See* Ito Decl., ECF 18-1. ANA's challenges based on standing, ripeness, and mootness properly are brought under Rule 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (standing and ripeness properly raised in Rule 12(b)(1) motion to dismiss); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (standing and mootness properly raised in Rule 12(b)(1) motion to dismiss).

#### a. Article III Standing

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

Bugarin alleges that she suffered injury when ANA failed to refund the fare for her return flight from Japan after cancelling that flight. *See* FAC ¶¶ 38, 41-43. ANA argues that Bugarin's allegations are insufficient to establish an injury in fact under Article III. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quotation marks and citation omitted). ANA asserts that Bugarin cannot meet that requirement here, because under the terms of the COC she is not entitled to a refund unless and until she requests one. It is clear from the face of the FAC that Bugarin never requested a refund from ANA. *See* FAC ¶ 19 ("Plaintiff called All Nippon several times and was on the phone for several hours each time, but she was never able to reach a representative of All Nippon."). Moreover, Mr. Ito's declaration states that ANA has no record of a request for refund by Bugarin, either through ANA's customer service telephone line or its website. Ito Decl. ¶¶ 26-26, ECF 18-1. Mr. Ito states that ANA has complied with the DOT Enforcement Notice by providing refunds within seven days to passengers who request refunds in accordance with ANA's COC. *See* Ito Decl. ¶ 28. According to Mr. Ito, as of July 2020 ANA had refunded more than 78,000 tickets issued in the United States. *See* Ito Decl. ¶ 29. Under these circumstances, ANA argues, Bugarin's claim of injury is conjectural and hypothetical, because she cannot know if ANA will deny her a refund unless and until she requests one. Moreover, ANA argues that there is no substantial risk that Bugarin will be denied a refund given its policy of granting refunds within seven days of a request for refund made in accordance with its COC.

**\*4** In response, Bugarin asserts that she was not required to request a refund under the COC, and that such a request is not a condition precedent to obtaining a refund under the COC. She claims that this is so under the plain language of the COC, and because the COC incorporates the DOT Enforcement Notice, which requires carriers to provide refunds promptly after cancellation of flights. Even if a refund request were a condition precedent, Bugarin argues, she attempted to make such a request on multiple occasions but those attempts were frustrated when ANA placed her on endless holds. Bugarin contends that any failure to satisfy the asserted condition precedent is excused by ANA's conduct. "Under California law, if one contracting party prevents the other from performing a condition precedent, the party that is subject to the condition is excused from performing it." *FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 F. App'x 448, 451 (9th Cir. 2018); *see also City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490 (2008), *as modified on denial of reh'g* Aug. 28, 2008 ("It is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional.").

In reply, ANA contends that Bugarin's interpretation of the COC "is not only contrary to the plain language of the COC, but is nonsensical and would lead to absurd results." Reply at 1, ECF 27. ANA asks the Court to adopt its interpretation of the COC, under which a passenger must request a refund in order to obtain a refund. Further, ANA asks to the Court to find as a factual matter that it did not prevent Bugarin from requesting a refund, pointing to Mr. Ito's declaration statements that ANA's procedures for refunds due to matters outside its control have been available on its website at all times, and that under those procedures Bugarin could have requested a refund from ANA online or from ASAP. *See* Ito Decl. ¶¶ 22-23.

ANA's arguments regarding the proper interpretation of the COC are merits arguments that are not appropriate for disposition in the context of a standing inquiry. *Alatortev*, the case upon which ANA primarily relies in advancing its interpretation of the COC, addressed a Rule 12(b)(6) motion to dismiss for failure to state a claim, not a constitutional standing challenge. *See Alatortev v. JetBlue Airways Corp.*, No. 3:17-cv-04859-WHO, 2018 WL 2735355 \*5 (N.D. Cal. June 7, 2018) (granting Rule 12(b)(6) motion to dismiss plaintiff's claims against JetBlue for breach of its Contract of Carriage because "the contractual

language simply does not include the obligations Alatortev seeks to impose"). "Whether a plaintiff possesses legally enforceable rights under a contract is a question on the merits rather than a question of constitutional standing. Such a plaintiff fails to state a claim on which relief can be granted." *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 975 F.3d 770, 776 n.4 (9th Cir. 2020) ("[W]hether Claimants possess legally enforceable rights under the settlement agreement is a question of the merits rather than one of constitutional standing.").

Bugarin alleges that ANA had a contractual obligation to refund her return flight promptly after cancellation of the flight; that ANA breached that obligation; and that Bugarin suffered resulting damages, as she paid for a flight that was cancelled. *See* FAC ¶¶ 42-25. These allegations are sufficient to assert a concrete injury in fact, that is fairly traceable to the challenged conduct of ANA, and that is likely to be redressed by a favorable judicial decision. That Bugarin's contract claim may not be adequately alleged, or that ANA may have meritorious defenses to the contract claim, does not deprive Bugarin of constitutional standing.

ANA's motion to dismiss under Rule 12(b)(1) for lack of Article III standing is DENIED.

### b. Ripeness

"Standing and ripeness under Article III are closely related." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions." *Id.* (quotation marks and citation omitted). "But whereas standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addressees when that litigation may occur." *Id.* (quotation marks and citation omitted).

**\*5** The "ripeness doctrine reflects both constitutional and prudential considerations." *Id*. The constitutional ripeness inquiry generally "coincides squarely with standing's injury in fact prong." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) (quotation marks and citation omitted). Thus, where the court determines that the plaintiff's "stake in the legal issues is concrete rather than abstract," constitutional ripeness is satisfied. *Colwell*, 558 F.3d at 1123. As discussed above, the Court finds that Bugarin has alleged a concrete injury resulting from ANA's alleged breach of the COC. ANA's arguments that the COC requires Bugarin to request a refund, and that it did not prevent Bugarin from requesting a refund, go to the merits of the contract claim and not its constitutional ripeness.

The prudential ripeness inquiry "developed in order to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086-87 (9th Cir. 2015) (quotation marks and citation omitted). The Ninth Circuit has determined that there is no basis for a prudential ripeness inquiry where the dispute does not involve administrative agencies and, specifically, that courts "do not analyze the prudential component of the ripeness inquiry in private contract litigation." *Id.* Prudential ripeness therefore is not relevant in the present case, which involves a contract dispute between private parties.

ANA's motion to dismiss under Rule 12(b)(1) for lack of constitutional ripeness is DENIED.

### c. Mootness

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotation marks and citation omitted). "[A]s long

as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quotation marks and citation omitted).

ANA asserts that the claims of any putative class members are moot, pointing to Mr. Ito's declaration statement that "ANA has actively provided refunds within seven days of a request when requested by U.S. passengers in accordance with its Conditions of Carriage and its refund policy posted on its website." Ito Decl. ¶ 28. Mr. Ito also states that "ANA has instructed its authorized agents to do the same." *Id.* As of July 2020, ANA had processed more than 78,000 refunds to U.S. passengers. Ito Decl. ¶ 29.

This evidence does not establish that Bugarin's claims are moot, as it is undisputed that she did not receive a refund. Nor is it clear from Mr. Ito's declaration that the claims of *all* putative class members are moot, as the identities of all putative class members cannot be ascertained from this record. Finally, Mr. Ito's indication that refunds have been processed as to U.S. passengers who requested refunds "in accordance" with ANA's COC does not demonstrate mootness, as there is a dispute regarding the proper interpretation of the COC.

ANA's motion to dismiss under Rule 12(b)(1) on grounds of mootness is DENIED.

### B. Challenge to Personal Jurisdiction under Rule 12(b)(2)

#### 1. Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 125 (2014)). California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-01. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945))**.**

**\*6** When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true. *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted). Factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Id.*

#### 2. Discussion

ANA is an entity organized under the laws of Japan, and it maintains its principal place of business in Japan. Ito Decl. ¶ 4. ANA asserts that it is not subject to this Court's personal jurisdiction, either with respect to Bugarin's individual claims or as to the claims of non-resident putative class members. Bugarin contends that ANA's personal jurisdiction challenges are without merit.

##### a. Bugarin's Individual Claims

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler*, 571 U.S. at 127. General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation marks and citation omitted). Specific personal jurisdiction

exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127-28.

Bugarin contends that ANA is subject to specific personal jurisdiction in California; she does not assert the existence of general personal jurisdiction. The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation marks and citation omitted).

### i. Purposeful Availment

Under the first prong of the *Schwarzenegger* test, Bugarin must show either purposeful availment or purposeful direction by ANA. "[A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as executing or performing a contract there." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (quotation marks and citation omitted). "By contrast, [a] showing that a defendant purposefully directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* (quotation marks and citation omitted). "[A] purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort." *Id.* (quotation marks and citation omitted).

**\*7** A purposeful availment analysis is most appropriate here, as Bugarin sues only for breach of contract and rescission of contract. Bugarin alleges, and ANA does not dispute, that ANA is Japan's largest airline, carrying more than 9 million passengers internationally in 2019. FAC ¶ 6. Bugarin further alleges that "ANA maintains an office in this District with 240 employees and has routes that fly to or from airports in California, including the flight at issue that Plaintiff was supposed to board." FAC ¶ 22. ANA does not dispute those allegations, and in fact Mr. Ito's declaration confirms that ANA has approximately 240 employees in its California offices and that in 2020 ANA operated five passenger flight routes in and out of California. Ito Decl. ¶¶ 6-8. Bugarin notes that ANA is registered with the California Secretary of State and maintains a registered agent for service of process in California. *See* RJN, ECF 26. Finally, Bugarin asserts that when she purchased her ticket, she – a California resident – entered into a contract with ANA, specifically, the COC. *See* FAC ¶ 37 ("Defendant entered into contracts with Plaintiff and members of the Class through its Contract of Carriage."). Bugarin asserts that these facts are sufficient to meet the purposeful availment prong. The Court agrees.

The Court notes that ANA's reply is devoid of argument on the *Schwarzenegger* test. ANA does not respond to Bugarin's showing on the prongs of that test or make any mention of its challenge to the Court's personal jurisdiction over it with respect to Bugarin's individual claims. The Court therefore concludes that ANA has abandoned its personal jurisdiction challenge with respect to Bugarin's individual claims. *See Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2020 WL 5517261, at \*9 (N.D. Cal. Sept. 13, 2020) (reply brief's failure to address opposition arguments constituted abandonment of position taken in opening motion brief). The Court nonetheless addresses the remaining *Schwarzenegger* prongs, below.

### ii. Arising Out Of

In determining whether a plaintiff's claim arises out of or relates to the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm,* 503 F.3d 1050, 1058 (9th Cir. 2007) (quotation marks and citation omitted). Under this test, Bugarin must show that she would not have suffered an injury "but for" ANA's California-related conduct.

Bugarin argues that "but for" ANA's forum-related activities, in particular operating the flight for which she purchased a ticket and entering into a contractual relationship with her through the COC, she would not have suffered injury. The Court agrees.

ANA has not responded to this argument in its reply and thus, in the Court's view, has abandoned its challenge to personal jurisdiction with respect to Bugarin's individual claims. The Court notes that ANA's motion argues that Bugarin cannot satisfy the arising out of prong because she purchased her airline ticket from ASAP, not ANA, and because "[n]o refund-related activity was alleged to have occurred in California." Mot. at 22, ECF 18. The Court finds ANA's argument to be unpersuasive. As noted above, Bugarin's claims are grounded in the COC – a contract between ANA and Bugarin, a California resident – and ANA's cancellation of a flight that was scheduled to fly into the forum state. ANA has not cited any authority suggesting that the arising out of test cannot be met on these facts.

The Court finds that Bugarin has met the arising out of prong.

### iii. Reasonableness

Because Bugarin has satisfied her burden with respect to the first two prongs, the burden shifts to ANA to satisfy the third prong of the *Schwarzenegger* test. *See Schwarzenegger,* 374 F.3d at 802. ANA has not met this burden, as it has not addressed the reasonableness prong of the *Schwarzenegger* test in either its motion or its reply.

ANA's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction with respect to Bugarin's individual claims is DENIED.

### b. Non-Resident Putative Class Members' Claims

ANA contends that even if specific personal jurisdiction exists with respect to Bugarin's individual claims, she has failed to establish the existence of specific personal jurisdiction with respect to the claims of non-resident putative class members. ANA bases its argument on *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 137 S. Ct. 1773 (2017), in which the Supreme Court addressed specific personal jurisdiction in the context of a mass tort action brought against a prescription drug manufacturer, Bristol-Myers Squibb ("BMS"), in California state court. More than 600 plaintiffs, most of whom were not California residents, asserted state law claims based in injuries allegedly stemming from use of BMS's drug Plavix. *Bristol-Myers Squib,* 137 S. Ct. at 1777. The Supreme Court held that the California state court lacked specific personal jurisdiction over BMS as to claims of non-forum residents, where "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781. The Supreme Court concluded that under those circumstances, there was an insufficient connection between the nonresidents' claims and the forum to support the exercise of specific personal jurisdiction. *Id.* at 1781-82.

**\*8** ANA asks the Court to dismiss the claims of non-resident putative class members under the reasoning of *Bristol-Myers Squib*. Bugarin argues that *Bristol-Myers Squibb*, a mass tort action, does not apply to federal class actions such as this one. The Ninth Circuit has not spoken on the issue, and the decisions of district courts within the Ninth Circuit are split. "District courts have typically taken one of three approaches when asked to consider the application of *Bristol-Myers Squibb* to nationwide class actions." *Carpenter v. PetSmart,* Inc., 441 F. Supp. 3d 1028, 1034 (S.D. Cal. 2020) (collecting cases). "First, many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases." *Id.* (citation omitted). Those courts have determined that it is appropriate to allow claims of non-resident class members to proceed so long as the court has jurisdiction

over the class representative's claims. *Id.* That determination is based in part on the view that "[t]he due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights." *Id.* (citation omitted). A second set of district courts has held that "the same due process concerns that animated *Bristol-Myers Squibb* necessarily apply to nationwide class actions in federal courts." *Id.* (citation omitted). "A third set of district courts opts to defer this issue until class certification: since unnamed plaintiffs are merely potential class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims." *Id.* (citation omitted).

This Court finds the third of these approaches to be the most appropriate in this case. The Court has no way to determine on this record how large any nationwide class would be. While Bugarin alleges that a nationwide class would constitute "hundreds of thousands of individuals," FAC ¶ 29, ANA asserts that it has provided refunds to all U.S. passengers who made legitimate requests for refund, Ito Decl. ¶¶ 28-29. This approach is consistent with that of other courts in this district. *See Vallarta v. United Airlines, Inc.*, No. 19-CV-05895-HSG, 2020 WL 6271151, at *6 (N.D. Cal. Oct. 26, 2020) ("At this early stage of the litigation, no class has been certified, and thus it would be premature to determine whether this Court has jurisdiction over Defendant with respect to the claims of any absent class members prior to class certification.").

ANA's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction with respect to non-resident putative class members' claims is DENIED. This ruling is without prejudice to a renewed argument based on *Bristol-Myers Squibb* if and when the case reaches the class certification stage.

### C. Challenge to Pleading under Rule 12(b)(6)

#### 1. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys.*, 829 F.3d at 1063 (citing *Tellabs*, 551 U.S. at 322).

#### 2. Discussion

ANA moves to dismiss both Claim 1 for breach of contract and Claim 2 for rescission. ANA first argues that the claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. To the extent the contract claim is not preempted, ANA asserts that it fails because Bugarin has not pled that she satisfied a condition precedent to refund under the COC, specifically, a request for refund. Finally, ANA contends that Bugarin is not entitled to the remedy of rescission as a matter of law. In opposition, Bugarin argues that her claims are not preempted, that there was no condition precedent to a refund, and that she has stated a claim for rescission.

#### a. Preemption

**\*9** "The Airline Deregulation Act of 1978 prohibits States from enacting or enforcing any law relating to air carrier rates, routes, or services." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 221-22 (1995) (quotation marks, citation, brackets, and ellipses removed). However, while "the ADA's preemption prescription bars state-imposed regulation of air carriers," the statute "allows room for court enforcement of contract terms set by the parties themselves." *Id.* The exception to preemption recognized by *Wolens* is narrow. Even where a state law claim is based on an airline's self-imposed contractual obligations, the claim is preempted if it "seeks to enlarge the contractual obligations that the parties voluntarily adopt." *Nw., Inc. v. Ginsberg,* 572 U.S. 273, 276 (2014).

ANA asserts that Bugarin's contract and rescission claims are preempted because they relate directly to ANA's rates and services. Bugarin responds that her claims fall within the exception articulated by *Wolens*, because they are based on the express terms of ANA's COC.

### i. The Contract Claim is Not Preempted

Claim 1 for breach of contract alleges that ANA breached the COC, which is attached to the FAC as Exhibit A. FAC ¶¶ 35-46 & Exh. A. Bugarin alleges that "Defendant entered into contracts with Plaintiff and members of the Class through its Contract of Carriage." FAC ¶ 37. She quotes Section 13 of the COC, which provides in part that: "[w]hen a Passenger is prevented from using the Carriage provided for in his/her Ticket resulting from [All Nippon] cancels a flight ... the amount of the refund shall be ... if no portion of the trip has been made, an amount equal to the fare paid." FAC ¶ 38 (quoting COC § 13(C)).

Bugarin also quotes language in the COC providing that ANA may cancel a passenger's reservation "in accordance with Applicable Laws," FAC ¶ 39 (quoting COC § 8(E)(3)), and that "any carriage and other services to be performed or provided by ANA shall be subject to: (a) Applicable Laws," FAC ¶ 40 (quoting COC § 17(A)(2)(a)). Bugarin interprets this language to constitute an express incorporation of the DOT Enforcement Notice. FAC 44 ("All Nippon's Contract of Carriage expressly incorporates the DOT Enforcement Notice."). She alleges that the DOT Enforcement Notice, as incorporated into the COC, required ANA "to provide refunds to passengers with a "prompt refund" as defined by 14 C.F.R. § 259.5(b)(5). FAC ¶ 44. Section 259.5(b)(5) and provisions referenced therein in turn require airlines to provide "prompt" refunds for cancelled flights, meaning within seven days for credit card purchases and within twenty days for cash or check purchases. *See Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. EDCV 20-767-JGB(SPX), 2020 WL 5625740, at \*6 (C.D. Cal. Sept. 17, 2020).

In Bugarin's view, these provisions taken together required ANA to provide her with a "prompt refund" upon the cancellation of her return flight. FAC ¶¶ 12, 41, 44. Although not alleged in the FAC, Bugarin apparently paid for her flight by credit card, as she argues in her opposition brief that "Defendant was required to issue a refund to Plaintiff within seven days" of her flight's cancellation. Opp. at 1, ECF 25. Claim 1 alleges that ANA breached this obligation by failing to provide passengers with a "prompt refund" for cancelled flights. FAC 44. Because this contract claim is grounded in the express terms of the COC, the Court concludes that it falls within the exception to preemption discussed in *Wolens*. Whether Bugarin properly interprets the COC raises a separate question that is addressed below.

In opposition to the motion, Bugarin argues that ANA was required to refund her cancelled flight "immediately" under California Civil Code § 1657. *See* Opp. at 11, ECF 25. Section 1657 reads as follows: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly – as, for example, if it consists in the payment of money only – it must be performed immediately upon the thing to be done being exactly ascertained." Cal. Civ. Code § 1657. Bugarin argues in her opposition brief that "here, the payment of a refund 'consists in the payment of money only,' and shall, accordingly, be paid immediately upon the cancellation of the flight or soon thereafter" under § 1657. Opp, at 11, ECF 25.

**\*10** The FAC does not mention § 1657 or suggest that it governs Bugarin's contract claim. The Court finds that a contract claim based on application of § 1657 would be preempted by the ADA in this case. The COC does not provide a time frame for

refunds. Thus, requiring ANA to provide refunds "immediately" pursuant to § 1657 would impermissibly enlarge or enhance the COC. A number of district courts within the Ninth Circuit have reached the same conclusion in airline refund cases. *See Castanares v. Deutsche Lufthansa AG*, No. CV 20-4261-MWF (MRWx), 2020 WL 6018807, at *4 (C.D. Cal. Oct. 9, 2020) ("[T]he ADA preempts application of Civil Code section 1657 to the Conditions of Carriage."); *Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWx), 2020 WL 6018806, at *4 (C.D. Cal. Oct. 7, 2020) (same); *Daversa-Evdyriadis*, 2020 WL 5625740, at *6 ("Plaintiff's reliance on section 1657 clearly serves to enlarge[ ] or enhance[ ] the GCC based on state laws or policies external to the agreement." (quotation marks omitted)). Because the FAC does not rely on § 1657, however, preemption is not warranted.

Accordingly, ANA's motion to dismiss Claim 1 on preemption grounds is DENIED.

### ii. The Rescission Claim is Preempted

Claim 2 for rescission is asserted pursuant to California Civil Code § 1689(b), which enumerates circumstances under which a party may rescind a contract under California law. *See* Cal. Civ. Code § 1689(b). Bugarin alleges that rescission is warranted under § 1689(b)(4)-(6). FAC ¶ 49. Those subsections read as follows:

> (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.
>
> (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.
>
> (6) If the public interest will be prejudiced by permitting the contract to stand.

Cal. Civ. Code § 1689(b)(4)-(6).

Bugarin alleges that "Defendant's consideration for the payments of Plaintiff and members of the Classes was the provision of flights to and from the United States. Defendant's consideration failed in a material respect because Defendant cancelled or otherwise did not provide the flights that were the consideration for the payments." FAC ¶ 50. She also alleges that ANA's flights were unlawful due to government ordered travel restrictions. FAC ¶ 51. Finally, Bugarin alleges that "[t]he public interest will be prejudiced if the Contract of Carriage is permitted to stand. Defendant will continue to retain the monies of Plaintiff and members of the Classes without providing them flights." FAC ¶ 52.

ANA's COC governs the parties' relationship. It explains passengers' recourse for a cancelled flight and, as relevant here, identifies circumstances under which a passenger may obtain a refund. *See* COC ¶¶ 8, 13. ANA argues that a state law rescission claim applying Cal. Civ. Code § 1689 to extinguish the COC does not fit within the *Wolens* exception to ADA preemption, because such application would not enforce the parties' self-imposed obligations but rather would do just the opposite. The Court agrees. At least one district court within this circuit has found that a rescission claim asserted on similar facts would be preempted. *See Daversa-Evdyriadis*, 2020 WL 5625740, at *6. Bugarin has not cited any cases suggesting that a rescission claim would not be preempted by the ADA under the facts of this case.

ANA's motion to dismiss Claim 2 on preemption grounds is GRANTED.[3]

### b. Adequacy of Pleading Re Contract Claim (Claim 1)

ANA argues that even if Bugarin's claim for breach of contract is not preempted, she has failed to allege sufficient facts to state a claim. "To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. W. Valley Mission Cmty. Coll. Dist.*,

66 Cal. App. 4th 1532, 1545 (1998). ANA challenges Bugarin's pleading on the second element, the plaintiff's performance or excuse for nonperformance. Specifically, ANA contends that the COC includes a condition precedent to obtaining a refund, which is the passenger's submission of evidence of entitlement to a refund. Bugarin argues that the COC does not contain a condition precedent to a refund. Moreover, she asserts that ANA's conduct in putting her on endless holds when she telephoned to request a refund excuses her nonperformance of the asserted condition precedent.

**\*11**  The contract claim does not specify what state law governs. The parties apply California law, so the Court does as well. Under California law, "[c]onditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not invoke any required magical incantation." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (quotation marks and citation omitted). "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

ANA contends that a condition precedent to obtaining a refund is set forth in Section 13(B) of the COC, which reads in relevant part as follows:

> (B) Person to whom Refund will be made
>
> (1) Unless otherwise provided in this Paragraph, ANA will make a refund to the person named in a Ticket or, to the person who purchased the Ticket *upon presentation to ANA of satisfactory evidence to prove that he/she is entitled by these Conditions of Carriage to such refund.*
>
> (2) (a) If a person other than the Passenger named in a Ticket pays for the Ticket and designates a person to whom refund shall be made, ANA will indicate on the Ticket that there is a restriction on a person to whom refund shall be made and make a refund only to the designated person.

COC § 13(B) (emphasis added).

The FAC simply ignores this language, which appears to provide that prior to obtaining a refund, a passenger must present ANA with satisfactory evidence of entitlement to a refund. Bugarin asserts that the language does not create condition precedent, but merely clarifies who may obtain a refund. While § 13(B)(1) does indicate two potential refund recipients, the person named on the ticket and the person who purchased the ticket, either person must present ANA with evidence of entitlement to a refund in order to obtain a refund. It therefore appears from the plain language of the COC that a request for refund, supported by evidence sufficient to prove entitlement to a refund, is a condition precedent to obtaining a refund.

Bugarin argues that no request for refund is required under the DOT Enforcement Notice, which she argues is incorporated into the COC. Bugarin's reliance on the DOT Enforcement Notice is misplaced. The "vast majority" of district courts to address the issue have held that "boilerplate contractual language guaranteeing compliance with international or domestic aviation laws does not incorporate extraneous law into the terms of an airfare contract." *Daversa-Evdyriadis*, 2020 WL 5625740, at \*4. "[O]nly language explicit enough to reflect an intent to be affirmatively bound by a specific aviation law or regulation is sufficient to result in incorporation." *Id.* The language to which Bugarin points, indicating that ANA may cancel a passenger's reservation "in accordance with Applicable Laws," COC § 8(E)(3), and that ANA's carriage and other services shall be "subject to ... Applicable Laws," COC § 17(A)(2)(a), simply is not specific enough. *See Castanares*, 2020 WL 6018807, at \*4 ("The Court agrees with Lufthansa that the DOT regulations relied upon by Plaintiffs are not expressly incorporated into Lufthansa's Conditions of Carriage.").

Bugarin argues that if there is a condition precedent, it is excused in this case because "she made multiple attempts to obtain a refund, but was unable to reach Defendant because Defendant left Plaintiff and Class members in an endless hold loop." Opp. at 3, ECF 25. "Under California law, if one contracting party prevents the other from performing a condition precedent, the party that is subject to the condition is excused from performing it." *FNBN Rescon I*, 725 F. App'x at 451; *see also City*

*of Hollister*, 165 Cal. App. 4th at 490 ("It is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional.").

**\*12** Bugarin's allegations regarding her attempt to obtain a refund are quite sparse, totaling three sentences in the paragraph identifying her as a party in the case. *See* FAC ¶ 19. The sentences read: "Plaintiff attempted to request a cash refund from All Nippon by calling All Nippon. Plaintiff called All Nippon several times and was on the phone for several hours each time, but she was never able to reach a representative of All Nippon. Plaintiff was not refunded by All Nippon for her return flight, despite these repeated requests." FAC ¶ 19. The Court finds these allegations to be insufficient to show that ANA prevented Bugarin from performing the condition precedent.

ANA's motion to dismiss Claim 1 for failure to state a claim is GRANTED WITH LEAVE TO AMEND. On amendment, Bugarin may attempt to allege facts showing that Section 13(B) does not create a condition precedent to refund. For the reasons discussed above, it is the Court's view that the language in question does appear to create a condition precedent. However, as Bugarin has not previously addressed the language in her pleading, it may be that she can allege facts showing the contrary. To the extent Bugarin claims that her performance of any condition precedent was excused, she shall allege facts supporting that claim with more particularity.

**III. ORDER**

(1) ANA's motion to dismiss is:

    (a) GRANTED WITH LEAVE TO AMEND as to Claim 1 for failure to state claim under Rule 12(b)(6);

    (b) GRANTED WITHOUT LEAVE TO AMEND as to Claim 2 on preemption grounds under Rule 12(b)(6); and

    (c) otherwise is DENIED.

(2) Any amended pleading shall be filed on or before February 9, 2021.

(3) Leave to amend is limited to Claim 1 for breach of contract. No additional claims or parties may be added without leave of the Court.

(4) This order terminates ECF 18.

**All Citations**

Slip Copy, 2021 WL 175940

**Footnotes**

| | |
|---|---|
| 1 | The background facts are drawn from the FAC and from evidence submitted by the parties, which as discussed in Section II below may be considered in connection with the motions under Rules 12(b)(1) and 12(b)(2). |
| 2 | Bugarin refers to this document alternately as the "Conditions of Carriage" and the "Contract of Carriage." *See, e.g.,* FAC ¶ 13, ECF 15; Opp. at 1, ECF 25. |
| 3 | In light of this ruling, the Court need not reach ANA's alternative argument that the rescission claim is subject to dismissal for failure to allege adequate facts. |

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.