UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WINIFREDO HERRERA, et al.,

Plaintiffs,

v.

CATHAY PACIFIC AIRWAYS LTD.,

Defendant.

Case No.  20-cv-03019-JCS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND**

Re: Dkt. No. 32

## I.    INTRODUCTION

In this putative class action, Plaintiffs Winifredo Herrera ("Mrs. Herrera") and Macaria Herrrera ("Mr. Herrera") assert a claim for breach of contract against Defendant Cathay Pacific Airways Ltd. ("Cathay Pacific") based on allegations that Cathay Pacific has failed to honor its contractual obligation to provide a cash refund for a flight for which they had purchased tickets that was cancelled as a result of the COVID-19 public health emergency. Instead, Plaintiffs allege, Cathay Pacific offered them only vouchers for flight credits that would expire in July 2020. Cathay Pacific answered the complaint on August 6, 2020. Cathay Pacific now brings a Motion to Dismiss or in the Alternative, for Judgment on the Pleadings ("Motion"), in which it contends the entire action should be dismissed under Rules 12(b)(1), 12(b)(2), 12(c) and 23(d)(1)(D) of the Federal Rules of Civil Procedure.  A hearing on the Motion was held on January 29, 2021.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1   **II.   BACKGROUND**

2        **A.   The Complaint**

3        Cathay Pacific is a transcontinental airline company based in Hong Kong.  Complaint ¶¶

4   12-13.  Plaintiffs are a husband and wife who purchased tickets to travel to the Philippines in the

5   fall of 2019 and to return to the United States on the same flight, in February 2020. *Id.* ¶¶ 45-46.

6   They allege that the cost of Mrs. Herrera's roundtrip ticket was approximately $1,000 while Mr.

7   Herrera's ticket cost $700.  *Id.*  Plaintiffs allege that Cathay Pacific canceled the return flight,

8   informing them that they would receive a refund for their cancelled flight.  *Id.* ¶ 47.  Plaintiffs

9   allege that they had to pay for a flight on another airline to return to San Francisco, at a cost of

10  approximately $700 per ticket.  *Id.* ¶ 49.

11       According to the Herreras, after they had returned home to the United States, they did not

12  receive an automatic refund; rather, they received an e-mail from Cathay Pacific informing them

13  that they would receive a travel voucher instead of a refund for the cancelled flight. *Id.* ¶¶ 34, 50.

14  To even request a refund, they allege, Cathay Pacific "requires its customers to navigate through

15  its website, including by using login information and password."  *Id.*  ¶ 34. They also allege that

16  Cathay Pacific made it "functionally impossible to specifically request refunds over vouchers/

17  coupons by inaccessibility of customer service, with wait times of more than two hours frequently

18  reported" and that Cathay Pacific "obscure[ed] passengers' right to a monetary refund."  *Id.* ¶ 44.

19       Plaintiffs allege that "[t]he voucher that [Cathay Pacific] indicated it would provide would

20  expire one year from the original date of purchase, such that Plaintiffs would need to use it by July

21  of 2020 despite the continuing impacts of the global pandemic, particularly on international

22  travel."  *Id.* ¶ 51.  Plaintiffs allege that this a general practice on Cathay Pacific's part and that it is

23  "uniformly denying refunds to customers and forcing them to accept expiring flight credits."  *Id.* ¶

24  36.  Plaintiffs allege that they "have repeatedly attempted to contact [Cathay Pacific] regarding the

25  refund that they are owed" and that "[t]hree e-mails from Mrs. Herrera to [Cathay Pacific] have

26  gone unreturned."  *Id.* ¶ 52.

27       Plaintiffs assert that as part of each ticket purchase, Cathay Pacific "made a promise and

28  warranty to customers that in the event of a flight cancellation or substantially interrupted flight,

United States District Court
Northern District of California

2

United States District Court
Northern District of California

customers are entitled to a full cash refund." *Id.* ¶ 29.  In particular,  they allege that "Defendant's General Conditions of Carriage ['GCC'] state that '[w]here we fail to provide carriage in accordance with your contract with us, or where you request a voluntary change of your arrangements, we will refund any unused Ticket or portion thereof[.]'" *Id.* ¶ 20(a).[2]  They go on to allege that "Defendant's General Conditions of Carriage state that '[w]here we fail to provide carriage in accordance with your contract with us, or where you request a voluntary change of your arrangements, we will refund any unused Ticket or portion thereof[.]'" *Id.* ¶ 20(b). Paragraph 20(b) cites https://www.cathaypacific.com/content/dam/cx/legal-and-privacy/ka-general-conditions-of-carriagefor-passengers-baggage-en.pdf (last visited April 30, 2020).  That link is to a document entitled "Cathay Dragon General Conditions of Carriage" (hereinafter, "Cathay Dragon GCC").  The language quoted in Paragraph 20(b) is found in Article 12.1 of the Cathy Dragon GCC. The Complaint alleges that "[f]or involuntary refunds, Defendant warranties that '[i]f we cancel a flight, [or] fail to operate a flight reasonably according to schedule … the amount of the refund shall be: a) If no portion of the Ticket has been used, an amount equal to the fare paid; b) If a portion of the ticket has been used the refund will be the higher of: i. The one way fare (less applicable discounts and charges) from point of interruption to destination or point of next stopover, or ii. The difference between the fare paid and the fare for the transportation used.'" *Id.* ¶ 21. Although the Complaint does not identify the source of this specific language, it is a direct quote from Cathay Dragon GCC Article 12.4.  The Complaint alleges that "Defendant's contract of carriage does not promise, permit, or require the issuance of any vouchers or coupons lieu of monetary refunds in the event of cancellation." *Id.* ¶ 22.

According to Plaintiffs, "[i]nstead of providing an automatic refund, as promised, Defendant requires its customers to navigate through its website, including by using login information and password, merely to request a refund." *Id.* ¶ 34. Plaintiffs allege that by providing vouchers instead of a refund of their tickets, Cathay Pacific has breached its contract of carriage.

---

[2] The Complaint includes two consecutive paragraphs numbered as paragraph 20.  To avoid confusion, the Court refers to the first Paragraph 20 as "Paragraph 20(a)" and the second Paragraph 20 as "Paragraph 20(b)."

1   *Id.* ¶ 43.

2        Plaintiffs also assert that Cathay Pacific's conduct violates 49 U.S.C. § 4172, which

3   prohibits unfair and deceptive practices by air carriers, and guidance issued by the U.S.

4   Department of Transportation ("U.S. DOT"), including an April 3, 2020 notice to airline carriers

5   stating "that passengers should be refunded promptly when their scheduled flights are cancelled or

6   significantly delayed" and that "[a]lthough the COVID-19 public health emergency has had an

7   unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or

8   significantly delayed flights remains unchanged."  *Id.* ¶ 41.

9        Plaintiffs assert a single claim, for breach of contract, on behalf of themselves and a

10  putative nationwide class.  *Id.* ¶¶ 62-69. The proposed class is defined as follows:

> All persons residing in the United States or its territories who
> purchased tickets for travel on a Cathay Pacific flight scheduled to
> operate from February 1, 2020 through the date of a class certification
> order, whose flight(s) were canceled by Cathay Pacific, and who were
> not provided a refund. Excluded from the Class are (a) any person
> who has specifically requested a coupon or voucher in lieu of a
> refund; (b) any person who requested and received alternative air
> transportation in lieu of a refund; (c) all persons who are employees,
> directors, officers, and agents of either Defendant; (d) governmental
> entities; and (e) the Court, the Court's immediate family, and Court
> staff.

17  *Id.* ¶ 53.

18      **B.    The Motion**

19       In the Motion, Cathay Pacific seeks dismissal of Plaintiffs' complaint on several grounds.

20  First, it argues that Plaintiffs fail to state a claim for breach of contract because they rely on the

21  Cathay Dragon GCC rather than Cathay Pacific's own General Conditions of Carriage ("Cathay

22  Pacific GCC"), and that it is the latter that applies to refunds on the Herrera's cancelled flight

23  because Cathay Pacific issued their tickets.  Motion at 15-16.  It argues further that even if

24  Plaintiffs had cited the correct contract, it was not breached by Cathay Pacific's failure to provide

25  an automatic refund within a reasonable period of time because Cathay Pacific's GCC does not

26  include such a requirement.  *Id.*  at 16-18.  Cathay Pacific further contends Plaintiffs failed to state

27  a claim for breach of the Cathay Pacific GCC because they do not allege that they requested a

28  refund.  *Id.* at 18-19.

United States District Court
Northern District of California

Cathay Pacific also argues that the Airline Deregulation Act ("ADA") preempts Plaintiffs' claims because those claims depend on expanding Cathay Pacific's obligations beyond the duties identified in the Cathay Pacific GCC. *Id.* at 19-22. Moreover, Cathay Pacific argues, Plaintiffs cannot rely on DOT regulations and guidance because they are not incorporated into the GCC and do not provide for a private right of action to enforce them. *Id.*

Next, Cathay Pacific contends Plaintiffs do not have standing under Article III of the Constitution to pursue their claims because they have not suffered an injury in fact, their claims are not ripe, and their claims are also moot. *Id.* at 10-11; 25-29. The claims are not ripe, it contends, because Plaintiffs have not requested a refund and are moot because "Cathay Pacific has a refund program and has issued over 1.3 Million refunds since February 1, 2020." *Id.* (citing T. Kwong Decl. ¶ 3).

Finally, Defendants ask the Court to strike the class claims asserted on behalf of a nationwide class because Plaintiffs "cannot establish personal jurisdiction for a nationwide class action where class claims have no connection with California." *Id.* at 29-32.

## III.   ANALYSIS

### A.   Legal Standards

#### 1.   Rule 12(b)(1)

Rule 12(b)(1) allows defendants to move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Challenges based on lack of standing under Article III of the Constitution and on federal preemption are properly brought under Rule 12(b)(1). *See Williams v. Apple, Inc*., 449 F. Supp. 3d 892, 900 (N.D. Cal. 2020) ("Although lack of 'statutory standing' requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1)") (citing *Nw. Requirements Utilities v. F.E.R.C*., 798 F.3d 796, 808 (9th Cir. 2015) (citations omitted)); *McCray v. Marriott Hotel Servs*., Inc., 902 F.3d 1005, 1009 (9th Cir. 2018) ("Preemption is a matter of subject matter jurisdiction . . . .").

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll*

United States District Court
Northern District of California

*Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). "The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing Fed. R. Civ. P. 12(h)(3); *Csibi v. Fustos*, 670 F.2d 134, 136 n. 3 (9th Cir. 1982); Wright & Miller § 1393, at 863–64).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6)." *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1124 (S.D. Cal. 2005) (citing Moore's Federal Practice Guide § 12.30). This means the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001).

Where a defendant brings a factual challenge, on the other hand, the defendant "disputes the truth of allegations that otherwise would give rise to federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction. *Id.*

### 2. Rule 12(b)(2)

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Such a motion must be "made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where . . . the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'"

6

1     *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot

2     simply rest on the bare allegations of its complaint, . . . uncontroverted allegations in the

3     complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800

4     (9th Cir. 2004) (internal quotation marks omitted). "Conflicts between parties over statements

5     contained in affidavits must be resolved in the plaintiff's favor." *Id.*

### 3.  Rule 12(c)

7          Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment

8     on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R.

9     Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)

10    because, under both rules, a court must determine whether the facts alleged in the complaint, taken

11    as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th

12    Cir. 2012) (citation and internal quotation marks omitted). Generally, a plaintiff's burden at the

13    pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

14    pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

15    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  In ruling on a motion

16    under Rule 12(c), the Court must accept all factual allegations in the complaint as true and view

17    them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925

18    (9th Cir. 2009).

19         Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on

20    the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901

21    F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations

22    respecting all the material elements necessary to sustain recovery under some viable legal theory."

23    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing

24    *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that

25    offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

26    not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting

27    *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked

28    assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127

*United States District Court*
*Northern District of California*

S.Ct. 1955). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

### 4.   Rule 23(d)(1)(D)

Rule 23(d)(1)(D) provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).   Under this rule and Rule 12(f) of the Federal Rules of Civil Procedure, the Court "has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

### B.   Request for Judicial Notice

In its Request for Judicial Notice ("RJN"), Cathay Pacific asks the Court to take judicial notice of the following:  1) The Passenger Name Records ("PNR") of the Herreras (RJN, Exs. A-1 & A-2); 2) ticket information relating to the Herraras' tickets for the cancelled flight (RJN, Exs. B-1 and B-2);  3) the Cathay Pacific GCC (RJN, Ex. C); 4)  the Cathay Dragon GCC (RJN, Ex. D); 5) a page from Cathay Pacific's website entitled, "Cancel your ticket and request a refund," describing the procedure for obtaining a refund (RJN, Ex. E); 6) a page from Cathay Pacific's website entitled, "Exchange your ticket for Cathay Credits," describing its Cathay Credits program (RJN, Ex. F); 7) an Enforcement Notice regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel issued by the U.S. Department of Transportation (RJN, Ex. G).  Cathay Pacific contends these exhibits are subject to judicial notice both because they meet the requirements of Rule 201 of the Federal Rules of Evidence and because they fall under the incorporation by reference doctrine.

Both Rule 201 of the Federal Rules of Evidence and the doctrine of incorporation by reference permit district courts to consider materials outside a complaint when considering the adequacy of the pleadings under Rule 12(b)(6) or 12(c), "but each does so for different reasons and in different ways."  *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

United States District Court
Northern District of California

8

United States District Court
Northern District of California

Rule 201 of the Federal Rules of Evidence permits a court to notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" *Khoja*, 899 F.3d at 899 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks and citation omitted)). However, a court cannot take judicial notice of disputed facts contained in such public records. *Id*.

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.*

Exhibits A and B – the PNRs and ticket information for the Herreras – do not clearly fall under the doctrine of incorporation by reference. While Plaintiffs allege that Cathay Pacific's sale of their tickets gave rise to certain contractual obligations, the Complaint does not rely on the PNRs or the ticket information reflected in Exhibit B in support of Plaintiffs' breach of contract claim. Nor is it clear that the information in these documents is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Indeed, Cathay Pacific has not identified the particular adjudicative facts for which it requests judicial notice based on these documents. Therefore, the Court denies Cathay Pacific's request for judicial notice of Exhibits A and B. The Court notes, however, that it would reach the same conclusions with respect to Cathay Pacific's Rule 12(c) challenges even if it were to take judicial notice of these documents.

The Court further concludes that Exhibit C (the Cathay Pacific GCC) does not fall under the doctrine of incorporation by reference because when the Complaint is read as a whole, it is apparent that the allegations regarding "Defendant's General Conditions of Carriage" refer to the Cathay Dragon GCC rather than Cathay Pacific GCC (as Cathay Pacific itself contends in arguing

9

1    that Plaintiffs fail to state a claim for breach of contract because they rely on the Cathay Dragon

2    GCC rather than the Cathay Pacific GCC).   Nonetheless, the Court finds that the Cathay Pacific

3    GCC is subject to judicial notice because its terms "can be accurately and readily determined from

4    sources whose accuracy cannot reasonably be questioned" and Plaintiffs do not question the

5    authenticity of the document offered by Cathay Pacific as Exhibit C.  To the contrary, Plaintiffs

6    rely on that document in their Opposition brief in addressing Cathay Pacific's arguments about its

7    obligations under the Cathay Pacific GCC.

8          On the other hand, because the Complaint provides a link to the Cathay Dragon GCC

9    (RJN, Exhibit D) and quotes the terms of that document in support of their breach of contract

10   claim, the Court finds that it can be considered on a motion to dismiss under the doctrine of

11   incorporation by reference.

12         Exhibits E and F are pages from Cathay Pacific's website, which Cathay Pacific offers to

13   contradict the allegations in the complaint as to whether Cathay Pacific is providing refunds to

14   passengers whose flights were canceled due to the public health emergency.  *See* Motion at 19

15   ("plaintiffs' claim that Cathay Pacific is only providing vouchers (Compl. ¶¶ 53, 67) is

16   contradicted by Cathay Pacific's website, which states that flight credits are an alternative to

17   refunds. T. Kwong Decl. ¶ 17, Ex. F); *id*. at 29 (arguing that "the only relief plaintiffs could obtain

18   through this class action is a refund" but that "Cathay Pacific has issued millions of refunds as of

19   the date of this filing and its refund program is clearly described on its website. T. Kwong Decl. ¶

20   3, 16 Ex. E.").  Neither of these documents is incorporated in the Complaint.  Moreover, to the

21   extent that Cathay Pacific seeks to rely on these documents to establish the truth of the statements

22   made on its website about its refund policies and practices, these statements are subject to

23   reasonable dispute and therefore do not meet the requirements of Rule 201.  *See Castanares v.*

24   *Deutsche Lufthansa AG*, No. CV204261MWFMRWX, 2020 WL 6018807, at *3 (C.D. Cal. Oct.

25   9, 2020) (declining to take judicial notice of airline webpages offered by the defendant in a case

26   involving claims similar to those asserted here because "[a]lthough these documents are publicly

27   available, their content is subject to reasonable dispute (the central dispute of this lawsuit, in

28   fact).").

United States District Court
Northern District of California

1    Exhibit G contains the DOT guidance cited by Plaintiffs in their Complaint and therefore is

2 subject to judicial notice under Rule 201 and also may be considered under the doctrine of

3 incorporation by reference.  Plaintiffs do not appear to dispute that the Court can take judicial

4 notice of this document.  *See* Opposition at 4 ("The Court should therefore decide the 'failure to

5 state' portion of Defendant's motion without regard to the declaration, its exhibits, or the

6 *nonpublic* exhibits to Defendant's request for judicial notice which are clearly an attempted end-

7 around of Rule 12(c)) (emphasis added).

8    **C.    Jurisdictional Challenges**

9    Before considering Cathay Pacific's challenges on the merits, the Court must address its

10 jurisdictional challenges.[3]  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

11 ("[J]urisdiction generally must precede merits in dispositional order.").  As discussed above, the

12 Court may consider evidence when it decides jurisdictional challenges under Rule 12(b)(1) and

13 12(b)(2) whereas it is limited to the pleadings, documents incorporated by reference and facts of

14 which it can take judicial notice when it considers a challenge under Rule 12(c).

15    **1.    Article III Standing**

16    "[T]he 'irreducible constitutional minimum' of standing consists of three elements."

17

18 _____

[3] The Court notes that Cathay Pacific's challenges to subject matter jurisdiction based on ADA
19 preemption and its challenges on the merits under Rule 12(c) overlap to the extent that they are
based on the argument that the Cathay Pacific GCC does not contain the obligations that Plaintiffs
20 allege were breached.  Cathay Pacific contends that in seeking to enforce obligations that are not
contained in its GCC, Plaintiffs' breach of contract claim amounts to an attempt to enhance or
21 enlarge the terms of the contract (resulting in ADA preemption, as discussed below) and that they
fail to state a claim for breach of contract under Rule 12(c).  In this Order, the Court addresses
22 Cathay Pacific's argument that Plaintiffs cannot read into the conditions of carriage a term
requiring reasonable time for performance of Cathay Pacific's alleged refund obligation as a
23 matter of subject matter jurisdiction because Cathay Pacific has identified a specific common law
rule that it contends is preempted, as discussed below.  On the other hand, it addresses Cathay
24 Pacific's challenges based on other terms of the contract, such as its argument that there is no
obligation to provide automatic refunds, as merits challenges under Rule 12(c) because Cathay
25 Pacific has not identified any specific "law, regulation, or other provision having the force and
effect of law," *see* 49 U.S.C. § 41713, it contends is preempted by the ADA in connection with
26 those challenges.  However, to the extent that some courts have found that *any* reading of  a
contract that attempts to impose obligations on an airline that go beyond the terms of the contract
27 gives rise to ADA preemption, *see, e.g., Alatortev v. JetBlue Airways, Inc.*, No. 3:17-CV-04859-
WHO, 2018 WL 784434 (N.D. Cal. Feb. 7, 2018), the Court notes that even if it were to address
28 all of Cathay Pacific's arguments about its obligations under its GCC as challenges to subject
matter jurisdiction under Rule 12(b)(2), it would reach the same result.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*.

Cathay Pacific brings a facial challenge to Article III standing, arguing that Plaintiffs have not alleged injury in fact because they "do not allege that they actually requested and were denied a refund from Cathay Pacific." Motion at 26. According to Cathay Pacific, although Plaintiffs allege that Cathay Pacific is "uniformly" denying refunds "upon refund requests," they do not allege that they themselves made such a request, or that it was denied. *Id.* (quoting Complaint ¶ 36). Instead, Plaintiffs allege that it was "functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported." *Id.* (quoting Complaint ¶ 44). Plaintiffs counter that their allegations are sufficient to show injury in fact because they have alleged that Cathay Pacific "failed to provide transportation and then denied them the refund to which they are contractually entitled." Opposition at 11. According to Plaintiffs, "[t]he deprivation of money, even temporarily, 'gives rise to an injury in fact for purposes of Article III standing.'" *Id.* at 10 (quoting *Van v. LLR, Inc*., 962 F.3d 1160, 1161 (9th Cir. 2020)). They further assert that "for any length of time 'the inability to have and use money to which a party is entitled is a concrete injury… because every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.'" *Id.* (quoting *Van v. LLR, Inc*., 962 F.3d at 1161).

The Court concludes that Plaintiffs have adequately alleged injury in fact. The essence of Cathay Pacific's argument is that under the terms of the Cathay Pacific GCC, Plaintiffs were obligated to request a refund before Cathay Pacific had any obligation to provide them with a refund. This condition precedent argument is echoed in Cathay Pacific's Rule 12(c) challenges and in that context it is appropriate; here, however, it is not. As was recently explained in *Bugarin v. All Nippon Airways Co., Ltd.*, in which the court addressed the same argument, Cathay Pacific's arguments about the proper interpretation of its GCC, and in particular, whether its terms

1    require that a passenger request a refund as a condition precedent for any contractual obligation to

2    provide a refund arises, is a merits argument "that is not appropriate for disposition in the context

3    of a standing inquiry."  No. 20-CV-03341-BLF, 2021 WL 175940, at *4 (N.D. Cal. Jan. 19, 2021)

4    (citing *Lindsey v. Starwood Hotels & Resorts Worldwide Inc*., 409 F. App'x 77, 78 (9th Cir.

5    2010);  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., 975 F.3d

6    770, 776 n.4 (9th Cir. 2020)).

7            In *Bugarin*, the plaintiff brought a putative nationwide class action against All Nippon

8    Airways Co., Ltd. ("ANA"), asserting that it had "breached its Conditions of Carriage ['COC'] by

9    failing to issue refunds to thousands of passengers whose flights were cancelled as a result of the

10   COVID-19 pandemic." *Id*. at *1.  ANA argued that Bugarin did not have Article III standing

11   because under the terms of the  COC, Bugarin was  not entitled to a refund "unless and until she

12   request[ed] one" and  it was "clear from the face of the [Complaint] that Bugarin never requested a

13   refund from ANA." *Id*.  at *3.  The Court rejected the argument, finding as follows:

> Bugarin alleges that ANA had a contractual obligation to refund her
> return flight promptly after cancellation of the flight; that ANA
> breached that obligation; and that Bugarin suffered resulting
> damages, as she paid for a flight that was cancelled. *See* FAC ¶¶ 42-
> 25. These allegations are sufficient to assert a concrete injury in fact,
> that is fairly traceable to the challenged conduct of ANA, and that is
> likely to be redressed by a favorable judicial decision. That Bugarin's
> contract claim may not be adequately alleged, or that [the airline] may
> have meritorious defenses to the contract claim, does not deprive
> Bugarin of constitutional standing.

20   *Id.*

21           The Court finds the reasoning in *Bugarin* to be persuasive and reaches the same conclusion

22   here.  The Herreras, like Bugarin, allege that the airline had a contractual obligation to refund their

23   cancelled flight promptly and that the airline breached that obligation.  These allegations are

24   sufficient to assert a concrete injury in fact that is fairly traceable to the challenged conduct of

25   Cathay Pacific and that is likely to be redressed by a favorable judicial decision.  Therefore, the

26   Court rejects Cathay Pacific's argument that the Complaint must be dismissed based on lack of

27   Article II standing.

28

*United States District Court*
*Northern District of California*

13

1    **2.  Ripeness**

2        "For a suit to be ripe within the meaning of Article III, it must present concrete legal

3    issues, presented in actual cases, not abstractions." *Colwell v. Dep't of Health & Human Servs.*,

4    558 F.3d 1112, 1123 (9th Cir. 2009).  "The constitutional ripeness inquiry generally 'coincides

5    squarely with standing's injury in fact prong.'" *Bugarin*, 2021 WL 175940 at * 5 (quoting *Sacks v.*

6    *Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) (internal quotation marks and

7    citation omitted)). "Thus, where the court determines that the plaintiff's 'stake in the legal issues is

8    concrete rather than abstract,' constitutional ripeness is satisfied." *Id.* (quoting *Colwell*, 558 F.3d

9    at 1123).  Applying these standards, the court in *Bugarin* rejected ANA's argument that the

10   plaintiff's claims were not ripe because she had not requested a refund, which it asserted was a

11   condition precedent to any obligation to provide a refund under the COC.  *Id.*  Instead, it

12   concluded that Bugarin had alleged a concrete injury and that ANA's argument went to the merits

13   of her breach of contract claim and not to ripeness.  *Id.*  This Court reaches the same conclusion;

14   the Herreras have alleged a concrete injury and Cathay Pacific's argument that they were required

15   to request a refund goes to the merits of their breach of contract claim, not to ripeness.  The Court

16   therefore rejects Cathay Pacific's argument that the Complaint must be dismissed for lack of

17   ripeness.

18       **3.  Mootness**

19       "A case becomes moot only when it is impossible for a court to grant any effectual relief

20   whatever to the prevailing party." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298,

21   307 (2012) (quotation marks and citation omitted). "[A]s long as the parties have a concrete

22   interest, however small, in the outcome of the litigation, the case is not moot." *Id*. (quotation

23   marks and citation omitted).

24       Cathay Pacific's mootness challenge is both facial and factual.  Its facial challenge is based

25   on an allegation in the Complaint that "[a]t the time of the flight cancellation, Defendant informed

26   Ms. Herrera that the Herreras would receive a refund for their cancelled flight."  Motion at 29

27   (citing Complaint ¶ 48). Its factual challenge is based on evidence that Cathay Pacific has a refund

28   program, which is advertised on its website, but that the Herreras have never requested a refund.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In particular, Cathay Pacific's Senior Legal Counsel Tannie Kwong, has provided a declaration

2    stating that Cathay Pacific has "issued approximately 1,398,000 refunds, including both

3    involuntary and voluntary refunds, between February 1, 2020 and October 13, 2020" and that

4    "Cathay Pacific has promptly issued refunds where passengers have requested involuntary refunds

5    in accordance with Cathay Pacific's refund procedures."  Kwong Decl. ¶ 3. Kwong further states

6    that "Cathay Pacific has never received a refund request or any email communication from

7    plaintiff Macaria Herrera, plaintiff Winifredo Herrera, or their travel agent requesting a refund in

8    relation to the tickets referenced herein."  *Id.* ¶ 12.  Cathay Pacific also offers pages from its

9    website informing passengers that they can request a refund in lieu of flight credits and instructing

10   them how to do so.  Kwong Decl., Exs. E  & F.

11          The Court rejects Cathay Pacific's mootness challenge.  First, the single paragraph in the

12   Complaint on which Cathay Pacific relies is taken out of context.  According to Cathay Pacific,

13   the Herreras allege in Paragraph 48 that they were initially offered a refund when the flight was

14   cancelled.  But what the Herreras actually allege is that they were initially *told* they would receive

15   a refund but were later informed that they would receive travel vouchers and not a money refund.

16   Complaint ¶¶ 48, 50.  There is no allegation that Plaintiffs ever received a refund.  Nor has

17   Cathay Pacific offered any evidence that they received a refund.  Indeed, it is undisputed that they

18   have not been refunded for their tickets.  Moreover, the evidence Cathay Pacific relies on to show

19   that the Herreras could have received a refund if they had followed Cathay Pacific's procedures

20   for requesting one does not establish mootness because there is a dispute as to whether Plaintiffs

21   are contractually obligated to make such a request.  *See Bulganin,* 2021 WL 175940, at *5

22   (rejecting ANA's mootness argument based on similar evidence because it was undisputed that the

23   plaintiff had not received a refund and there was a dispute as to whether the COC required that she

24   request a refund).  Therefore, the Court rejects Cathay Pacific's assertion that the Complaint must

25   be dismissed based on mootness.

26          **4.  ADA Preemption**

27          "In 1978, Congress enacted the [ADA], 92 Stat. 1705, which largely deregulated domestic

28   air transport." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995).   "'To ensure that the States

15

would not undo federal deregulation with regulation of their own,'" the ADA includes a preemption clause . . . ." *Id.* at 221-222. *Id.* (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 378 (1992)).   In its current form, it provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C.A. § 41713.  However, the preemption clause "allows room for court enforcement of contract terms set by the parties themselves." *Wolens*, 513 U.S. at 221.  This exception is narrow. *Bugarin*, 2021 WL 175940, at *9. Thus, while express contract terms are not preempted by the ADA, any attempt to "enlarge[ ] or enhance[ ]" the parties' obligations under a contract "based on state laws or policies external to the agreement" are preempted.  *Wolens*, 513 U.S. at 233.

Applying these principals, courts that have addressed claims similar to Plaintiffs have found that breach of contract claims based on an airline's failure to issue timely refunds for cancelled flights are (or would be) preempted to the extent they rely on California Civil Code section 1657.[4]  These courts have also found that the April 3, 2020 DOT notice cited by Plaintiffs in their Complaint was not incorporated into the general conditions of carriage at issue in those cases.  On the other hand, they have found that breach of contract claims based on alleged untimely refunds are *not* preempted by the ADA to the extent they rely on  general principles of contract law to supply a term requiring performance within a reasonable time when no time is specified under the contract.

For example, in *Maree v. Deutsche Lufthansa AG,* the Court held that the plaintiff's breach of contract claim based on the theory that the airline was required to issue a refund within 7 days under the DOT regulations, as well her claim that it was required to issue an "immediate" refund

---

[4] Section 1657 provides as follows:

If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly--as, for example, if it consists in the payment of money only--it must be performed immediately upon the thing to be done being exactly ascertained.

Cal. Civ. Code section 1657.

under section 1657, failed because the DOT regulations were not incorporated into the conditions

of carriage and application of section 1657 was preempted by the ADA.  No. SACV 20885

MWFMRWX, 2020 WL 6018806, at *4-5 (C.D. Cal. Oct. 7, 2020).  On the other hand, it found

that the plaintiff could amend her complaint to assert a claim based on the theory that the airline

was required to provide a refund within a reasonable period – even though the general conditions

of carriage were silent as to the time allowed to provide a refund – finding that such a claim would

not be preempted under *Wolens*.  The court reasoned as follows:

> [I]mplicit in the Supreme Court's opinion in *Wolens* is that courts
> would remain free to use general principles of contract law to interpret
> parties' agreements without running afoul of the ADA. *See Wolens*,
> 513 U.S. at 232 ("the ADA permits state-law-based court adjudication
> of routine breach-of-contract claims"); accord *Hickcox-Huffman*, 855
> F.3d at 1065 n.39 (relying upon and citing to Restatement (Second)
> of Contracts (Am. Law Inst. 1981)); *Cox v. Spirit Airlines, Inc.*, 786
> F. App'x 283, 285 (2d Cir. 2019) ("Under *Wolens*, routine contract
> claims may proceed, which necessarily requires employing tools of
> contractual interpretation.").
>
> Under general principles of contract law, where a contract calls for
> singular performance and "no time is specified, a term calling for
> performance within a reasonable time is supplied." Restatement
> (Second) of Contracts § 204 (1981); see *id*. § 33 ("Valid contracts are
> often made which do not specify the time for performance. Where the
> contract calls for a single performance such as the rendering of a
> service or the delivery of goods, the time for performance is a
> 'reasonable time.'"). "[W]hat constitutes a reasonable time is a
> question of fact, which depends on the situation of the parties, the
> nature of the transaction, and the facts of the particular case." The
> *McCaffrey Grp., Inc. v. Superior Court*, 224 Cal. App. 4th 1330,
> 1351, 169 Cal. Rptr. 3d 766 (2014) (citation and internal alterations
> omitted).

*Id.*

In *Castanares v. Deutsche Lufthansa AG*, No. CV 204261 MWFMRWX, 2020 WL

6018807, at *4-5 (C.D. Cal. Oct. 9, 2020), the court reached similar conclusions.  There, the

plaintiffs asserted a claim for breach of contract where the airline had failed to refund their tickets

based on the theory that the airline was obligated to provide the refund "immediately upon

request" or within a reasonable time period.  *Id.*  at * 4.  As in *Maree*, the court concluded that to

the extent the plaintiffs relied on section 1657 and the DOT regulations, the claim failed because

the ADA preempts section 1657 and the DOT regulations were not incorporated into the airline's

conditions of carriage.  *Id.*  As to section 1657, the court observed that the airline "did not agree to issue refunds 'immediately,' as the statute requires" and therefore applying this provision would impermissibly enlarge or enhance the parties' agreement.  *Id.* (citing *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. EDCV 20-767-JGB(SPX), 2020 WL 5625740, at *6 (C.D. Cal. Sept. 17, 2020)).[5]  The court went on to hold, however, that "the ADA would not preempt [the plaintiff's] claim for breach of contract based on [the airline's] alleged failure to perform within a reasonable time" for the same reasons set forth in *Maree  Id.* at *5.

Most recently, Judge Freeman followed the reasoning in *Maree*  and *Castanaras*  to find in *Bugarin*  that while the DOT guidance governing airline refunds was not incorporated in ANA's conditions of carriage and  reliance upon section 1657 in support of a claim that the plaintiff was entitled to an "immediate" refund would be preempted by the ADA, the plaintiff's claim as alleged in the operative complaint was *not*  preempted because the complaint did not rely on section 1657. 2021 WL 175940, at *10.

Here, Plaintiffs do not dispute that their breach of contract claim relates to airline rates, routes or services.  Further, they stipulated at oral argument that their claims are not based on section 1657 and conceded that they would be preempted by the ADA if they were.  Likewise, they concede that the DOT regulations are not incorporated into Cathay Pacific's conditions of carriage and do not assert their claims based on those regulations.  Rather, they contend their claim relies on common law rules of contract interpretation, which other courts, including *Maree* and *Castanares*, have found fall outside the scope of ADA preemption.  Opposition at 7-9.  Plaintiffs argue further that the absence of ADA preemption is even more clear-cut here than in *Maree*  and *Castanares* because in those cases, "the court indicated that the plaintiffs would need to show that the timing of their refunds was not reasonable" whereas in this case "there have been no refunds at all, so whatever time could possibly be reasonable, Defendant has clearly exceeded it."  *Id.* at 9.

---

[5] In *Daversa-Evdyriadis v. Norwegian Air Shuttle*, upon which Cathay Pacific relies in the Motion, the plaintiff asserted a breach of contract claim based on allegations that the airline did not provide a refund for the cancelled flight for several weeks, arguing that the general conditions of carriage incorporated the DOT regulations and that the airline was bound by section 1657.  The court concluded that the plaintiff's breach of contract claim was preempted by the ADA.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court need not reach the question of whether Plaintiffs are correct that their breach of

2    contract claim does not rely on the common law rule reading a reasonable time requirement into

3    contracts that are silent on the time allowed for performance.  Rather, the Court finds that even if it

4    does rely on that common law rule, the claim is not preempted for the reasons set forth in

5    *Bugarin*, *Maree*  and *Castanares*. The Court rejects Cathay Pacific's argument that because

6    section 1657 codifies a principal of contract interpretation, the underlying common-law rule must

7    also be preempted. Cathay Pacific has not pointed to any authority in support of this position, and

8    the Court finds none.

9        Cathay Pacific's reliance on *Northwest, Inc. v. Ginsberg* for the proposition that "the ADA

10   preempts common-law rules in addition to statutory rules" is also unpersuasive.  *See* Reply at 12

11   (citing 572 U.S. 273, 284 (2014)).  Contrary to Cathay Pacific's characterization of the holding in

12   that case, the Court did not adopt a bright-line rule that the ADA preempts common law rules of

13   contract interpretation.  In that case, the Court addressed the question of whether the plaintiff's

14   claim for breach of the covenant of good faith and fair dealing was preempted by the ADA.  572

15   U.S. at 276.  The Court found that "state common-law rules fall comfortably within the language

16   of the ADA pre-emption provision[,]" which "applies to state 'law[s], regulation[s], or other

17   provision[s] having the force and effect of law[.]'"  *Id.* at 281-282.  It did not, however, conclude

18   that *all* state common law rules are preempted by the ADA; rather, it explained that the exception

19   to ADA preemption under *Wolens*  applied to "a subcategory of common-law claims, *i.e.*, those

20   based on the parties' voluntary undertaking, as falling outside that provision's coverage."  *Id.*  at

21   284.

22       In determining whether the claim in *Ginsberg* fell within the *Wolens* exception, the Court

23   explained that the "central issue" was "whether respondent's implied covenant claim is based on a

24   state-imposed obligation or simply one that the parties voluntarily undertook."  *Id.* at 285.[6] The

25   Court rejected arguments on both sides that ADA preemption does or does not apply, as a general

26

27   _____

6 The *Ginsberg* Court also addressed the preliminary question of whether the claim related to
"rates, routes, or services[,]" which is a prerequisite for ADA preemption, and found that it did.
*Id.*  at 284-285.  As Plaintiffs here do not dispute that their breach of contract claim satisfies that
28   requirement, the Court does not summarize the *Ginsberg* Court's analysis on that question.

rule, to claims for breach of the implied covenant of good faith and fair dealing, finding that "the reasoning of *Wolens* neither dooms nor spares all such claims." *Id.* The Court observed that "while some States are said to use the doctrine to effectuate the intentions of parties or to protect their reasonable expectations, . . . other States clearly employ the doctrine to ensure that a party does not violate community standards of decency, fairness, or reasonableness." *Id.* at 286 (internal quotations and citations omitted). Because the claim in *Ginsberg* was asserted under Minnesota law, the Court looked to Minnesota law, asking whether parties were free under the law of that state to contract out of the covenant. *Id.* at 287. Because Minnesota law does not permit parties to do so, the Court concluded that the covenant was imposed by law and not a reflection of the parties' voluntary agreement. *Id.* The Court found further support for its conclusion on the basis that under Minnesota law, the covenant applies to all contracts except employment agreements, which are exempted for "policy reasons." *Id.* The Court reasoned that if employment contracts are exempted for policy reasons, application of the covenant to other types of contracts must also be for policy reasons and therefore "cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Id.* at 287-288.

Under the reasoning of *Ginsberg*, the Court concludes that the common law rule invoked here, reading a reasonable time for performance into contracts that are silent about the time for performance, is nothing more than a rule to effectuate the intent of the parties. Unlike the covenant at issue in *Ginsberg*, there is no doubt that parties can contract around such a term by specifying the time for performance in the contract. Nor has Cathay Pacific pointed to any authority that suggests that this common-law rule is based on policy considerations like those that were found in *Ginsberg*. Rather than showing that the common law rule at issue in this case is preempted by the ADA, *Ginsberg* points to the opposite conclusion.

Therefore, the Court rejects Cathay Pacific's argument that Plaintiffs' claim is preempted under the ADA.[7]

---

[7] As noted above, Cathay Pacific also argues that Plaintiffs' breach of contract claim is preempted to the extent their claim is based on other obligations that Cathay Pacific contends do not exist under its GCC, such as the obligation to make an automatic refund rather than providing a refund upon request. The Court addresses these challenges under Rule 12(c) because they do not clearly

1

**D.     Whether Nationwide Class Allegations Should be Stricken**

2        Although Cathay Pacific does not assert that there is a lack of personal jurisdiction over the

3   Herreras, who allege that they are citizens of California, Complaint ¶ 11, it challenges the

4   definition of the putative nationwide class on the basis that the Court does not have personal

5   jurisdiction with respect to class members who were not residents of California during the class

6   period and whose breach of contract claim has no connection with California.  Motion at 29-32.

7   In support of this argument, they point to *Bristol-Myers Squibb Co. v. Superior Court of*

8   *California, San Francisco County*, a mass tort action in which "the Supreme Court held that

9   specific jurisdiction did not exist over claims asserted by plaintiffs who were not residents of

10  California and whose claims were not connected with California."  *Id.* at 30 (citing 137 S. Ct.

11  1773, 1777 (2017)).  According to Cathay Pacific, this holding also applies to Rule 23 class

12  actions.  *Id.* (citing *Carpenter v. PetSmart, Inc*., 441 F. Supp. 3d 1037 (S.D. Cal. 2020)).  Cathay

13  Pacific further contends that under Rule 23(d)(1)(D) and Rule 12(f), the class claims should be

14  stricken because it is apparent from the face of the Complaint that the class definition has a defect

15  as to personal jurisdiction that cannot be cured. *Id.* Plaintiffs counter that Cathay Pacific has

16  waived any objections based on personal jurisdiction because it has already filed an answer and

17  that in any event, the Court should not strike the class definition at this early stage of the case.

18  The Court rejects the first argument but agrees that it is more appropriate to address the question

19  of whether there is personal jurisdiction with respect to the claims of putative class members until

20  a later stage of the case.

21        Under Rule 12(b), "[e]very defense to a claim for relief in any pleading must be asserted in

22  the responsive pleading if one is required." Fed. R. Civ. P. 12(b).  A Rule 12(b) defense may also

23  be asserted in a motion made "before pleading if a responsive pleading is allowed."  *Id.*  Further,

24  under Rule 12(h), a defense under Rule 12(b)(2)-(5) is waived only: 1)  if it is omitted from a

25  motion asserting other Rule 12(b) defenses; or 2)  by "failing to either: (i) make it by motion under

26  [Rule 12]; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1)

27

28  ──────────────
implicate any particular common law rule or law that the ADA might preempt.

United States District Court
Northern District of California

United States District Court
Northern District of California

as a matter of course."  Fed. R. Civ. P. 12(h)(1).  Under these rules, "[d]efendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion, *Hays v. United Fireworks Mfg. Co*., 420 F.2d 836, 844 (9th Cir. 1969), or in a responsive pleading, *Sellers v. McCrane*, 55 F.R.D. 466 (E.D.Pa.1972)." *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).  In addition, even where the issue has been raised in a responsive pleading, an objection to personal jurisdiction may nonetheless be waived by conduct.  *Ear v. Empire Collection Authorities, Inc*., No. 12-1695-SC, 2012 WL 3249514, at *3 (N.D. Cal. Aug. 7, 2012) (explaining that Rule 12(h)(1) merely establishes the "outer limit" of waiver and that an objection to personal jurisdiction may be "waived by implication from acts acknowledging the court's power to adjudicate.").

Here, Cathay Pacific included in its Answer an affirmative defense based on personal jurisdiction.  *See* Docket No. 18 (Answer) at 16.  Further, given that the objection Cathay Pacific asserts relates to members of the putative class rather than the Herreras, and the case is not at the class certification stage, the Court finds that there is no conduct on Cathay Pacific's part – including any delay that would suggest it has acknowledge the Court's power with respect to the putative class members – that has given rise to a waiver of Cathay Pacific's defense.

Nonetheless, the Court concludes that Cathay Pacific's challenge is more appropriately addressed at the class certification stage of the case.   "While some courts have recognized the authority to 'strike class allegations [under Rule 23 and Rule 12(f)] prior to discovery if the complaint demonstrates that a class action cannot be maintained,' *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010), 'in general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification.' *Yastrab v. Apple Inc*., No. 14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) (denying motion to strike class allegations under Rule 23 as premature)."  *Mason v. Ashbritt, Inc*., No. 18-CV-07181-DMR, 2020 WL 789570, at *4 (N.D. Cal. Feb. 17, 2020). Thus, "'[c]ourts that have stricken class allegations at the pleading stage . . . have only done so in rare occasions where the class definition is obviously defective in some way.'" *Id.* (quoting *Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014)).  The Court concludes that the circumstances here do not

make this one of the rare cases in which it is appropriate to test the class allegations at the pleading stage. Therefore, the Court denies without prejudice Cathay Pacific's request to strike Plaintiffs' class allegations.

###    E.    Whether Plaintiffs State a Claim for Breach of Contract

Finally, the Court addresses Cathay Pacific's argument that Plaintiffs have failed to state a claim for breach of contract. Under California law, [8] a claim for breach of contract requires: "(1) existence of the contract; (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).   As currently pled, Plaintiffs have not alleged the first element because the Complaint cites to the Cathay Dragon GCC rather than the Cathay Pacific GCC, as discussed above. At oral argument, Plaintiffs conceded that the applicable contract is the Cathay Pacific GCC and not the Cathay Dragon GCC. Therefore, the Court finds that Plaintiffs have failed to state a claim for breach of contract.

The remaining question before the Court is whether it would be futile for Plaintiffs to amend their complaint to assert their breach of contract claim based on the Cathay Pacific GCC rather than the Cathay Dragon GCC. *See Smith v. Pac. Properties and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (holding that under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely given" unless amendment will result in undue prejudice to the opposing party or will be futile).   Because the Court finds that Plaintiffs may be able to amend their complaint to state a claim for breach of contract based on the Cathay Pacific GCC, Plaintiffs will be permitted to amend their complaint.

Flight cancellations and ticket refunds are addressed in Articles 10 and 11 of the Cathay Pacific GCC. Article 10.2 is entitled "CANCELLATION, REROUTING, DELAYS, ETC." and contains the following provisions:

> 10.2.2 Except as otherwise provided by the Warsaw Convention or the Montreal Convention or applicable law, if we cancel a flight, fail to operate a flight reasonably according to the schedule, fail to stop at

---

[8] The Court applies California law because the parties have relied on California law in addressing the obligations created by Cathay Pacific's GCC.

23

your destination or Stopover destination, or cause you to miss a connecting flight on which you hold a confirmed reservation, we shall, at your option, either:

10.2.2.1 carry you at the earliest opportunity on another of our scheduled services on which space is available without additional charges and; where necessary, extend the validity of your Ticket; or 10.2.2.2 within a reasonable period of time re-route you to the destination shown on your Ticket by our own services or those of another Carrier, or by other mutually agreed means and class of transportation without additional charge. If the fare, and charges for the revised routing are lower than what you have paid, we shall refund the difference;

10.2.2.3 or make a refund in accordance with the provisions of Article 11;

Kwong Decl., Ex. C (GCC), Article 10.2.  Article 11 is entitled "REFUNDS" and provides as

follows:

11.1 Unless otherwise stated in these conditions, fare rules or tariff or in accordance with applicable law, tickets are non-refundable. We will refund a Ticket or any unused portion, as set out below:

11.1.1 Except as otherwise provided in this Article, we shall be entitled to make refund either to the person named in the Ticket, or to the person who has paid for the Ticket upon presentation of satisfactory proof of such payment.

11.1.2 If a Ticket has been paid for by a person other than the Passenger named in the Ticket, and the Ticket indicates that there is a restriction on refund, we shall make a refund only to the person who paid for the Ticket, or to that person's order.

11.1.3 Except in the case of lost Tickets, refunds will only be made on surrender to us of the Ticket and all unused Flight Coupons.

11.1.4 A refund made to anyone presenting the Passenger Coupon or Passenger Receipt and all unused Flight Coupons and holding himself or herself out as a person to whom refund may be made pursuant to 11.2.1 or 11.2.2 shall be deemed a proper refund and shall discharge us from liability and any further claim for refund from you or from anyone else.

*Id.* Art. 11.1.

Article 11.2 is entitled "INVOLUNTARY REFUNDS" and provides, in relevant part, as

follows:

If we cancel a flight, fail to operate a flight reasonably according to schedule, fail to stop at your final destination or Stopover, or cause you to miss a connecting flight on which you hold a reservation, the amount of the refund shall  . . . be:

24

11.2.1 if no portion of the Ticket has been used, an amount equal to the fare paid;

11.2.2 if a portion of the Ticket has been used, the refund will be not less than the difference between the fare paid and the applicable fare for travel between the points for which the Ticket has been used.

*Id.*, Article 11.2.

Article 16.5.2 provides that Cathay Pacific is "not liable for any damage arising from our compliance with any laws or government regulations, orders or requirements, or from [a passenger's] failure to comply with the same." *Id.*, Article 16.5.2. Article 18 provides that "[n]one of [Cathay Pacific's] Agents, employees or representatives has authority to alter, modify or waive any provision of these Conditions of Carriage." *Id.*, Article 16.5.2.

Cathay Pacific argues that Plaintiffs cannot state a claim for breach of the Cathay Pacific GCC based on the facts alleged in the Complaint because the Cathay Pacific's GCC does not require automatic refunds. Motion at 16. In support of its contention that refunds are not automatic under the Cathay Pacific GCC, Cathay Pacific points to article 10, which it contends "offers passengers whose flights are cancelled three options: (1) a rescheduled flight; (2) a rerouted flight; or (3) a refund." *Id.* at 28. It also points to article 11, which it argues provides that "in order to obtain a refund, passengers must request a refund and surrender to Cathay Pacific 'the Ticket and all unused Flight Coupons.'" *Id.* (quoting Cathay Pacific GCC, art. 11). Cathay Pacific also cites Articles 11.5.3 ("We may refuse refund in the circumstances covered by Article 8.2[9] of these Conditions") and 16.5.2 (providing that Cathay Pacific is "not liable for any damage arising from our compliance with any laws or government regulations, orders or requirements, or from [a

---

[9] Article 8.2 provides, in part, as follows:

If, due to your behaviour, conduct, mental or physical condition, we have, in the exercise of our reasonable discretion, refused to carry you, or removed you en route, then we may cancel the remaining unused portion of your Ticket, and you will not be entitled to further carriage or to a refund either in respect of the sector that was the subject of the refusal of carriage or removal, or any subsequent sectors covered by the Ticket. We will not be liable for any consequential loss or damage alleged due to any such refusal to carry or removal en route.

Kwong Decl., Ex. C (Cathay Pacific GCC) Article 8.2.

United States District Court
Northern District of California

1    passenger's] failure to comply with the same.") in support of its position that refunds are not

2    automatic under its GCC.  *Id.*

3        Articles 11.5.3 and 16.5.2, on their face, do not apply to the facts alleged here.  Plaintiffs

4    do not allege that they are seeking a refund after being removed from their flight and Cathay

5    Pacific does not contend that they were (or offer any evidence of such, to the extent that it makes

6    the same argument in connection with its ADA preemption challenge).  Nor is there any allegation

7    or evidence in the record that Cathay was *required*  to cancel Plaintiff's flight under a specific

8    government regulation, order or requirement, notwithstanding that it is undisputed (and Plaintiffs

9    have alleged) that the cancellation was the result of the COVID public health emergency.  On the

10   other hand, the Court concludes that Articles 10 and 11 establish conditions precedent to the

11   obligation Plaintiffs allege was breached.

12       Under California law, "[c]onditions precedent must be expressed in plain, clear, and

13   unambiguous language, but parties need not invoke any required magical incantation." *Int'l Bhd.*

14   *of Teamsters v. NASA Servs., Inc*., 957 F.3d 1038, 1043 (9th Cir. 2020) (quotation marks and

15   citation omitted).  Here, the Court finds that Cathay Pacific's GCC contains at least two provisions

16   that make clear that refunds are not automatic.  First, in Article 10.2.2, passengers are given a

17   choice of receiving a refund or being placed on a rescheduled or rerouted flight "at [their]

18   option[.]"  This implies that passengers must take some affirmative action to select an option.

19   Likewise, Article 11.1.3 requires affirmative conduct on the part of the passenger to obtain a

20   refund, providing that "[e]xcept in the case of lost Tickets, refunds will only be made on surrender

21   to us of the Ticket and all unused Flight Coupons."

22       The facts alleged in the current version of Plaintiffs' complaint do not raise an inference

23   that either of the conditions precedent discussed above have been met.  Although it is not clear

24   whether Plaintiffs will be able to remedy this deficiency by amending the complaint, the Court

25   notes that they come close to alleging that they requested a refund, alleging in the Complaint that

26   they sent three emails to Cathay Pacific "regarding the refund."  Complaint ¶ 52.  Moreover, at

27   oral argument Plaintiffs' counsel represented that Plaintiffs did, in fact, request a refund.

28       Even if Plaintiffs are not able to allege facts showing that they satisfied the conditions

United States District Court
Northern District of California

precedent for obtaining a refund, they may be able to state a claim nonetheless by alleging facts showing that the conditions precedent were excused.  *See Consol. World Investments, Inc. v. Lido Preferred Ltd*., 9 Cal. App. 4th 373, 380 (1992) ("It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance.").  "It is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional." *City of Hollister v. Monterey Ins. Co*., 165 Cal. App. 4th 455, 490 (2008), as modified on denial of reh'g (Aug. 28, 2008).  Plaintiffs allege that Cathay Pacific "render[ed] it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or . . . obscuring passengers' right to a monetary refund." Complaint ¶ 44.  They also allege that they "have repeatedly attempted to contact Defendant regarding the refund that they are owed" and that "[t]hree e-mails from Mrs. Herrera to Defendant have gone unreturned." *Id.*  ¶ 52.  Because the Herraras do not allege that they themselves were placed on long holds or were unable to reach customer service, the Court concludes that the current Complaint does not allege with sufficient particularity that Plaintiffs were excused from performing the conditions precedent in Cathay Pacific's GCC.  Nonetheless, Plaintiffs may be able to remedy that deficiency by amending the complaint. *See Bugarin*, 2021 WL 175940, at *12  (finding allegations relating to difficulty of obtaining a refund to be too "sparse" to "show that ANA prevented Bugarin from performing the condition  precedent but giving the plaintiff leave to amend to allege specific facts showing that "her performance of any condition precedent was excused."). Therefore, the Court concludes that it is in the interest of justice to permit Plaintiffs to amend their complaint to remedy the deficiencies discussed above.

**IV.     CONCLUSION**

For the reasons set forth above, the Motion is GRANTED in part and DENIED in part. Plaintiffs' complaint is dismissed with leave to amend consistent with this Opinion. Plaintiffs' amended complaint shall be filed by March 26, 2021.

**IT IS SO ORDERED.**

Dated:  February 21, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California